Filed 2/11/15; pub. order 3/6/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

|  |  |
|---|---|
| DIONE AGUIRRE, | C073059 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV 22986) |
| v. | |
| AMSCAN HOLDINGS, INC., et al., | |
| Defendants and Respondents. | |

Plaintiff Dione Aguirre appeals from an order denying class certification. Plaintiff sued defendants Amscan Holdings, Inc., and PA Acquisition, doing business as Party America (collectively Party America) on behalf of herself and similarly situated individuals, alleging Party America violated Civil Code[1] section 1747.08 of the Song-Beverly Credit Card Act of 1971 (§ 1747 et seq.) by routinely requesting and recording personal identification information, namely ZIP Codes, from customers using credit cards in its retail stores in California. The trial court found that plaintiff's proposed class of "[a]ll persons in California from whom Defendant requested and recorded a ZIP code in

_____

[1] Further undesignated statutory references are to the Civil Code.

1

conjunction with a credit card purchase transaction from June 2, 2007 through October 13, 2010" is not an ascertainable class due to "plaintiff's inability to clearly identify, locate and notify class members through a reasonable expenditure of time and money [citation] bars her from litigating this case as a class action." Plaintiff appeals, arguing the trial court "erred in determining the class . . . was not ascertainable based upon the finding that each individual class member was not specifically identifiable from [Party America's] records, and thus, notice to the class cannot be directly provided to class members."[2] We shall conclude that the trial court applied an erroneous legal standard in determining the proposed class is not ascertainable and erred in its conclusion. Accordingly, we shall reverse and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Plaintiff's First Amended Complaint*

Plaintiff filed her original complaint on June 2, 2008, and the operative first amended complaint on June 9, 2008. The first amended complaint alleges that Party America's practice of requesting and recording personal identification information, namely ZIP Codes, from its credit card customers at the point-of-sale violated section 1747.08, which prohibits persons and businesses from requesting or requiring "personal identification information" as a condition to accepting a credit card as payment for goods or services.[3]

As to plaintiff, the first amended complaint alleges that within 12 months of bringing this action, plaintiff purchased an item from the Party America store in Placer

---

[2] We permitted Consumer Federation of California to file an amicus curiae brief in support of plaintiff.

[3] The parties have stipulated that plaintiff is no longer pursuing the additional causes of action set forth in the operative first amended complaint.

2

County using a credit card. During the transaction, the cashier requested plaintiff's ZIP Code, which plaintiff provided, believing she was required to do so to complete the transaction. The cashier then entered plaintiff's ZIP Code into an electronic cash register.

As to the class, the first amended complaint alleges that the "lawsuit is brought on behalf of an ascertainable statewide class consisting of all persons in California from whom [Party America] requested and recorded personal identification information in conjunction with a credit card transaction . . . ."[4] The members of the class are so numerous that joinder of all members is impracticable, and common questions of law and fact predominate, including: "whether each Class member engaged in a credit card transaction with [Party America]"; "whether [Party America] requested the cardholder to provide personal identification information and recorded [such information] . . . during credit card transactions with Class members"; and whether such conduct violates section 1747.08.

B.     *Party America's Motion for Judgment on the Pleadings*

In May 2010, Party America filed a motion for judgment on the pleadings on the sole ground that a cardholder's ZIP Code does not constitute "personal identification information" within the meaning of section 1747.08. The trial court granted the motion, plaintiff appealed, and we reversed, citing our Supreme Court's then recent decision in *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524 (*Pineda*), which holds that a cardholder's ZIP Code "constitutes 'personal identification information' as that phrase is used in section 1747.08" and that "requesting and recording a cardholder's ZIP Code,

---

[4] The following were excluded from the class: Party America, "its corporate parents, subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, and the legal representatives, successors or assigns of any such excluded persons or entities."

3

without more, violates the [statute]." (*Id.* at pp. 527-528.) (*Aguirre v. Amscan Holdings* (Nov. 8, 2011, C067105) [nonpub opn.].)

C.      *Party America's Motion for an Order Denying Class Certification*

On or about September 25, 2012, Party America moved for an order striking and dismissing the class allegations from plaintiff's operative complaint (Cal. Rules of Court, rule 3.767(a)(3)) and denying class certification (*id.,* rule 3.764(a)) on the grounds "there is no ascertainable class," and class certification is not the superior method for adjudication of this matter.  Specifically, Party America argued that the class definition was vague and overbroad as to the class period and type of credit card transaction covered making it difficult for persons hearing it to determine who is in the class and who would be bound by any judgment, "there is no means for identifying or locating potential members of the class, or any customers, so as to notify them of this action," and class treatment is inappropriate because it would expose Party America to damages that far exceed any damage to the class.

In support of its motion, Party America tendered as evidence the parties' responses to discovery.  Such evidence indicated that from approximately November 2005 through October 13, 2010, it was Party America's practice to request all of its customers for their ZIP Codes at the point-of-sale, regardless of the method of payment. A ZIP Code prompt would appear on the register screen, and employees were instructed, pursuant to a written "ZIP Code Survey" policy, to ask the customer for his or her ZIP Code, and to enter it accurately.  In the event a customer refused to provide his or her ZIP Code, employees were instructed to enter "99999."  Employees were admonished that "[e]ntering in false zip codes or not asking . . . will not be tolerated," and "[a]nyone that does not enter in the accurate information will be subject to disciplinary action, up to and including termination."  The purpose of Party's America's ZIP Code Survey policy was to determine new store locations and media placement purposes.  Party America recorded the customer's ZIP Code, along with the corresponding purchase amount.

4

There were approximately 1 million credit card transactions at Party America's California retail stores from June 2007 through October 13, 2010. Party America did not monitor the number of unique credit card transactions in its stores; thus, the 1 million figure necessarily includes transactions made by repeat customers.

Party America does not have documents or a database identifying the names or addresses of those who paid with credit cards or those who provided ZIP Codes. The sales receipt issued by Party America to plaintiff includes the date of purchase, the purchase amount, the method of payment ("AMEX"), and the store in which the purchase was made.

Plaintiff opposed the motion. She presented the following revised class definition in response to Party America's assertion that the class definition set forth in the first amended complaint was vague and overbroad: "All persons in California from whom Defendant requested and recorded a ZIP code in conjunction with a credit card purchase transaction from June 2, 2007 through October 13, 2010 (the 'Class'). [¶] The following persons are excluded from the Class: (i) persons who utilized a credit card issued for business purposes; (ii) persons whose personal identification information was required for a special purpose incidental but related to the individual credit card transaction, including but not limited to information related to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders; (iii) officers and directors of Defendant and of its corporate parents, subsidiaries, affiliates or any entity in which [Defendant] has a controlling interest, and the legal representative, successors, or assigns of any such excluded persons or entities; and (iv) the Court." The parties agreed that plaintiff could oppose Party America's motion on the basis of the revised definition.

In addition, plaintiff disputed Party America's claim that she must establish a means for identifying or locating potential members of the class so as to notify them of the action, arguing that any such requirement "improperly conflated ascertainability, class member identification, and notice into a single requirement . . . ." She asserted that the

5

revised class definition satisfied the ascertainability requirement because "[a]ny individual who looks at that class definition will know whether or not they're in that class and can confirm through objective evidence that they are, in fact, a member of that class." As for Party America's argument that there is no objective evidence that would indicate class membership, plaintiff pointed to credit card statements and sales receipts. According to plaintiff, potential class members have the ability to present a receipt or credit card statement showing a credit card transaction was entered into on a specific date, at a specific store location, and the specific amount of the purchase. That document "could [then] be cross-referenced with the records of defendant to show the specific purchase amount, show a ZIP Code was requested associated with that specific purchase amount and the transaction records." Finally, plaintiff argued that proceeding as a class action is the superior form of adjudication and that the size of Party America's potential liability should not be considered.

In its reply, Party America conceded that plaintiff's revised class definition cured the overbreadth issue, but argued that plaintiff nevertheless had failed to establish that "the proposed class, however redefined," was ascertainable. According to Party America, plaintiff failed to establish that "there exists a '**means** for identifying class members.' " "[O]ne needs to be able to identify the universe of people, not the specific individuals. . . . [T]here must be a way to identify generally this group through records of . . . the defendant or some other convenient way to do this so that you can get a definition in front of these people so that they can then self-identify. Otherwise, there is no ascertainable class . . . ." "To suggest that ascertainability is achieved by the speculative assertion that the supposed class members may have their own records is ridiculous. Neither the parties nor the court have any idea how to identify these people *in the first place* in order to give them notice of the class action so that they may then 'self-identify' as . . . class members."

6

*D.     The Trial Court's Ruling on the Motion for an Order Denying Class Certification*

The trial court agreed with Party America that plaintiff failed to establish the existence of an ascertainable class, and thus, granted the motion to strike and dismiss the class allegations and to deny class certification.  According to the trial court, "A class is ascertainable when (1) the members of the class are clearly identifiable and the size of the class is reasonably controlled; and (2) the members can be located and notified of the action through reasonable expenditure of time and money.  (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1274-1275.)"  The court also noted that it "is not aware of any authority that allows speculative advertising to establish an ascertainable class or that allows purported class members to self-identify without first establishing an ascertainable class."

In concluding plaintiff failed to establish the existence of an ascertainable class, the trial court reasoned:  "Defendants' discovery responses state they did not retain customers' names and that they cannot indentify customers from whom they obtained zip codes during credit card transactions.  Plaintiff has not challenged those discovery responses.  In fact, plaintiff's own discovery responses acknowledge that she is not aware of the identity of any other member of the purported class and that she does not know how many people are in the purported class.  Under these circumstances, any type of notice would necessarily be both over-inclusive (it would be distributed to individuals who never shopped at defendants' stores) and under-inclusive (there is no certainty the notice would reach all individuals who might have a claim).  [¶]  Furthermore, discovery has been ongoing for months, and at the initial hearing on this motion . . . , the parties agreed that additional discovery was not contemplated and would not assist the court in deciding this motion.  In light of the foregoing and the authorities cited above, plaintiff's inability to clearly identify, locate and notify class members through a reasonable expenditure of time and money . . . bars her from litigating this case . . . ."

7

The trial court did not address the parties' arguments as to whether a class action was a superior means of proceeding.

DISCUSSION

Plaintiff contends that the trial court erred in concluding that she failed to establish an ascertainable class because "each individual class member was not specifically identifiable from [Party America's] records, and thus, notice . . . cannot be directly provided to class members." We agree.

A.      *Section 1747.08*

Section 1747.08 prohibits merchants from requesting and recording "personal identification information" as part of a credit card transaction. (Civ. Code, § 1747.08, subd. (a)(2).) A cardholder's ZIP Code "constitutes 'personal identification information' as that phrase is used in section 1747.08," and "requesting and recording a cardholder's ZIP Code, without more, violates the [statute]." (*Pineda, supra,* 51 Cal.4th at pp. 527-528.) "Any person who violates [section 1747.08] shall be subject to a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation, to be assessed and collected in a civil action brought by the person paying with a credit card . . . . When collected, the civil penalty shall be payable, as appropriate, to the person paying with a credit card who brought the action . . . ." (§ 1747.08, subd. (e).)

B.      *Rules Governing Class Actions and Standard of Review*

Courts have assumed without specifically deciding that section 1747.08 authorizes class actions. (See, e.g., *Archer v. United Rentals, Inc.* (2011) 195 Cal.App.4th 807, 828-830; *TJX Companies, Inc. v. Superior Court* (2008) 163 Cal.App.4th 80, 84-89; *Korn v. Polo Ralph Lauren Corp.* (E.D.Cal. 2008) 644 F.Supp.2d 1212, 1215-1216; *Yeoman v. Ikea U.S. West, Inc.* (S.D.Cal. May 4, 2012, No. 11cv701 WQH (BGS)) 2012 U.S. Dist.

8

LEXIS 63888.)[5]  In the trial court, Party America argued that the class allegations should be dismissed because the Song-Beverly Credit Card Act does not authorize class actions. The trial court rejected Party's America's assertion, and Party America failed to challenge the trial court's decision.  Accordingly, we shall assume without deciding that class actions are authorized under section 1747.08.

In California, Code of Civil Procedure section 382 authorizes class action suits when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.)  "Drawing on the language of Code of Civil Procedure section 382 and federal precedent, [our Supreme Court] ha[s] articulated clear requirements for the certification of a class.  The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives."  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.)  The only element at issue here is the existence of an ascertainable class.  The meaning and purpose of that element are detailed in our discussion below.

"Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.  The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation];

---

[5]  Contrary to Party America's assertion, unpublished federal opinions may be cited as persuasive, although not binding, authority.  (Cal. Rules of Court, rule 8.1115; see also *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1096, fn. 18.)  Rule 8.1115 of the California Rules of Court prohibits the citation of unpublished opinions of California state courts, with certain limited exceptions.  (Cal. Rules of Court, rule 8.1115(a).)  We shall disregard the unpublished superior court opinions cited and relied upon by plaintiff.

or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435-436 (*Linder*).)

C.      *The Trial Court Erred in Finding the Class Is Not Ascertainable*

The trial relied on "plaintiff's inability to clearly *identify*, *locate* and *notify* class members through a reasonable expenditure of time and money" to conclude that the class proposed by plaintiff was not ascertainable. (Italics added.) The trial court erred.

"A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." (*Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828 (*Bartold*); see also *Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 920; *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1533; *Harper v. 24 Hour Fitness, Inc.* (2008) 167 Cal.App.4th 966, 977; *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 101 (*Medrazo*); *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 14; *Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858 (*Global Minerals*); *Aguiar v. Cintas Corp. No 2.* (2006) 144 Cal.App.4th 121, 136 (*Aguiar*).) "Ascertainability is achieved 'by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary.' " (*Bomersheim v. Los Angeles Gay & Lesbian Center* (2010) 184 Cal.App.4th 1471, 1483, quoting *Hicks v. Kaufman & Broad Home Corp*. (2001) 89 Cal.App.4th 908, 915 (*Hicks*).) "Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class

10

members" at the remedial stage  (*Reyes v. Board of Supervisors, supra,* 196 Cal.App.3d at pp. 1271, 1274-1275 (*Reyes*).)[6]

"While often it is said that '[c]lass members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records' [citations], that statement must be considered in light of the purpose of the ascertainability requirement." (*Medrazo, supra,* 166 Cal.App.4th at p. 101.) "Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata." (*Hicks, supra,* 89 Cal.App.4th at p. 914; see also *Aguiar, supra,* 144 Cal.App.4th at p. 135; *Medrazo, supra,* 166 Cal.App.4th at p. 101.)  The goal in defining an ascertainable class "is to use terminology that will convey 'sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiffs wish to represent.' [Citation.] . . . 'Otherwise, it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating.' " (*Global Minerals, supra,* 113 Cal.App.4th at p. 858.)

Contrary to the trial court's order, the representative plaintiff need not identify, much less locate, individual class members to establish the existence of an ascertainable

---

[6] The trial court cited *Reyes*, *supra,* 196 Cal.App.3d 1263, 1274-1275 as authority for the proposition that "[a] class is ascertainable when (1) the members are clearly identifiable and the size of the class is reasonably controlled; and (2) the members can be located and notified of the action through reasonable expenditure of time and money." *Reyes*, however, says no such thing.  *Reyes* provides, "Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying class members." (*Id.* at p. 1271.)  Moreover, the portion of the opinion cited by the trial court states, contrary to the trial court's finding, that "a plaintiff is *not* required at [the class certification] stage of the proceedings to establish the existence and identity of class members." (*Id.* at p. 1274, italics added.)  Rather, "within the context of manageability, the issue is whether there exist sufficient means for identifying class members at the remedial stage." (*Id.* at p. 1275, italics omitted.)

11

class.  (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 706 (*Daar*); *Reyes, supra,* 196 Cal.App.3d at p. 1274 ["it is firmly established a plaintiff is not required at this stage of the proceedings to establish the existence and identity of class members]; see also *Astiana v. Kashi Co.* (S.D.Cal. 2013) 291 F.R.D. 493, 500 ["If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.' "].)  Nor must the representative plaintiff establish a means for providing personal notice of the action to individual class members.  (See *Evans v. Lasco Bathware, Inc.* (2009) 178 Cal.App.4th 1417, 1422 ["A proponent at the class certification stage is not required to . . . identify a form of notice to obtain class certification."].)  Indeed, such a requirement would conflict with the liberal notice provisions contained in California Rules of Court, rule 3.766(f), which "is designed to dispense under certain circumstances with actual personal notice." (*Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067, 1076.)  Rule 3.766(f) states: "If personal notification is unreasonably expensive or the stake of individual class members is insubstantial, *or if it appears that all members of the class cannot be notified personally*, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action-for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group."  (Italics added.)

Party America does not dispute that the revised class definition is "sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description" set forth therein.  (*Bartold, supra,* 81 Cal.App.4th at p. 828.)  Rather, Party America claims the trial court properly concluded there is no ascertainable class because plaintiff failed to show that there is a means for identifying class members.  As a preliminary matter, we reject Party America's assertion that the trial court's determination that there is no ascertainable class was based plaintiff's failure to show that

12

there is a means for identifying class members.  As detailed above, the trial court explicitly (and improperly) based its decision on plaintiff's "inability to clearly *identify*, *locate* and *notify* class members through a reasonable expenditure of time and money . . . ."  (Italics added.)  Because the trial court applied an erroneous legal standard in reaching its decision, reversal is required.  (*Linder, supra,* 23 Cal.4th at pp. 435-436.)  In any event, plaintiff did propose a means of identifying class members.

In response to Party America's claim that the parties lack an adequate means for identifying class members, plaintiff pointed to sales receipts and credit card statements, noting that potential class members have the ability to present a receipt or credit card statement showing that a credit card transaction was entered into on a specific date, at a specific store location, and the specific amount of the purchase, and that such receipt or credit card statement "could [then] be cross-referenced with the records of defendant to show the specific purchase amount, show a ZIP Code was requested associated with that specific purchase amount and the transaction records."[7]

A similar method for identifying potential class members was approved in *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.* (N.D. Ill. 2010) 271 F.R.D. 139.  There, the defendant argued that the absence of records identifying the class members by name required decertification of the class because the class itself could not be ascertained and identified.  (*Id.* at p. 146.)  In addressing the defendant's argument, the district court observed that a "court should deny class certification where there is 'simply no reasonable way of identifying potential class members,' but 'definiteness does not require

_____

[7] Contrary to Party America's assertion, the number of potential class members may be gleaned from Party America's records, which indicate that there were over 1 million credit card transactions at Party America's California retail stores during the class period.  Because Party America employees were required to ask every customer for their ZIP Code, at this stage of the proceedings it can be assumed that each of those customers are members of the class.

13

plaintiffs to identify specific class members.' " (*Ibid.*) The court concluded that there was a reasonable way to identify potential class members in that case because "there is a log listing the receipts issued during the period in which [the defendant] was not in compliance with [the Fair and Accurate Credit Transactions Act's] truncation requirement. The log includes partial credit card information for each transaction, the date it occurred, and the amount of the transaction," which could "be used to verify whether any individual *who responds to class notice* is in fact a member of the class." (*Id.* at pp. 146-147, italics added; cited with approval in *In re Toys "R" Us - Delaware, Inc. - Fair & Accurate Credit Transactions Act (FACTA) Litigation* (C.D.Cal. 2013) 300 F.R.D. 347.) That is essentially what plaintiff proposes here.

As Party America points out, in many of the cases cited by the parties, the defendant's records provided a means for identifying class members; however, the absence of such records does not preclude the finding of an ascertainable class. For example, in *Daar*, the plaintiff sued a taxi company on behalf of himself and all others similarly situated to recover as damages overcharges allegedly made by the taxi cab company for taxi cab services. (*Daar, supra,* 67 Cal.2d at pp. 699-700.) The plaintiff alleged two causes of action, one on behalf of those who paid with script, and the second on behalf of those who paid with cash. (*Id.* at p. 700.) The cause of action brought on behalf of those who paid with script alleged "that the names and addresses of all purchasers and users of script books can be definitely ascertained from defendant's books and records." (*Id.* at p. 700.) The cause of action brought on behalf of those who paid cash did not contain a similar allegation. (*Id.* at pp. 702-703.) Our Supreme Court found that each of the causes of action, including that brought on behalf of those who paid with cash, showed "the existence of an ascertainable class." (*Id.* at pp. 716-717.). The court explained: "Defendant apparently fails to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit. *If the existence of an*

14

*ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class.* Presumably an accounting in the suit at bench will determine the total amount of the alleged overcharges; any judgment will be binding on all the users of taxicabs within the prior four years. However, no one may recover his separate damages until he comes forward, *identifies himself* and proves the amount thereof." (*Id.* at p. 706, italics added.)[8]

*Weaver v. Pasadena Tournament of Roses Asso.* (1948) 32 Cal.2d 833, cited by Party America, is inapposite. There, the plaintiffs alleged that defendants advertised the sale of 7,500 tickets to the 1947 Rose Bowl, but closed the box office after only 1,500 tickets were sold, even though the plaintiffs had been given numbered identification stubs assuring them of an opportunity to purchase tickets. (*Id.* at pp. 835-836.) The plaintiffs sought to represent a class of individuals who had waited in line but were denied tickets to the game. (*Id.* at p. 838.) Our Supreme Court found that "[t]he causes of action of the several plaintiffs and the other unnamed aggrieved individuals are separate and distinct," and "[t]hus, a decision favorable or adverse to these plaintiffs -- or any one of them -- could not determine the rights of any of the unnamed parties whom plaintiffs purport to represent." (*Ibid.*) Accordingly, the court found that "these unknown parties are ascertainable only insofar as each may come forward and individually present proof of all the facts necessary to authorize a recovery in accordance with the merits of his particular case, and judgment in one would by no means be a judgment in any other. Plaintiffs here

---

[8] Contrary to defendants' assertion and the trial court's statement, ascertainability was *not* presumed in *Daar*, and the complaint did *not* allege that each member of the class who paid cash was known to the defendant. As set forth above, the cause of action brought on behalf of those who paid with cash contained no such allegation. (*Daar, supra,* 67 Cal.2d at pp. 702-703.)

15

do not claim to represent an association or protective committee nor do they present any reasonable basis for ascertaining the members of the alleged class for whom they seek to act in this litigation." (*Id.* at pp. 843-844.)[9] Unlike *Weaver,* here, plaintiff's claims and those of the unnamed class members are not separate and distinct such that each must individually present proof of *all* facts necessary to authorize a recovery. Moreover, plaintiff has presented a means for identifying class members.

*Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639 (*Sotelo*), also relied on by Party America and the trial court, is factually distinguishable. There, the plaintiff sought to certify a class of persons who worked " 'for or on behalf of' " various newspaper companies " 'in folding, inserting advertising materials into, bagging, bundling, loading, and/or delivering said newspaper to its residential subscribers, . . . and whom no defendant has acknowledged to be its employee in the performance of such work.' " (*Id.* at p. 645.) The defendants' "records identified approximately 5,000 individuals who had signed a contract with a newspaper. However, because putative class members retained the assistance, with or without a contract, of others who remained unknown to [the defendants], the actual size of the proposed class [was] unknown." (*Id.* at p. 646.) In affirming the trial court's conclusion that the plaintiff failed to establish an

---

[9] In *Weaver,* the court explained that while "the plaintiffs, and perhaps others who waited in line and were refused tickets of admission, have an interest in a common question of law, that is, whether the statutory recovery is authorized when an operator of a 'place of public amusement or entertainment' advertises 7,500 tickets for sale to the general public and then later, after selling only 1,500, closes the box office upon announcing that 'all of the available tickets had been sold," "the determination of such question in the present case would still leave to be litigated the right of any other person to recover on his statutory claim in the light of whether he, in reliance upon the advertised sale, stood in line, received an identification stub, was denied tickets before the promised 7,500 had been sold, presented himself at the Rose Bowl as a 'sober, moral person,' demanded admission, tendered the price, and was refused, entitling him "to recover . . . his actual damages" as well as the fixed statutory penalty of $100." (*Weaver, supra,* 32 Cal.2d at pp. 838-839.) Such is not the case here.

16

ascertainable class, the Court of Appeal agreed with the trial court's observation that " 'we are not faced with a speculative administrative burden but (as the class is defined) an actual obstacle to identifying persons who *contend* that they folded and bagged papers during the class period, for one or more defendants:  a lack of objective evidence (such as business records) that indicate class membership.' " (*Id.* at pp. 648-649.)  Unlike *Sotelo,* here, there exists objective evidence indicating class membership, namely sales receipts and/or credit card statements that can be cross-referenced with Party America's records to determine whether the customer's ZIP Code was in fact recorded.

In *Sotelo*, the court goes on to state that where, as in that case, "the proposed class contains an unknown number of members who have no recorded relationship with respondents, a serious notice issue results.  The theoretical ability to self-identify as a member of the class is useless if one never receives notice of the action." (*Sotelo, supra,* 207 Cal.App.4th at p. 649.)  To the extent that *Sotelo* can be read as requiring a plaintiff to establish a means of providing personal notice of the action to prospective class members at the certification stage (*id.* at pp. 648-649), we respectfully disagree.  As previously discussed, we view any such requirement as inconsistent with the liberal notice provisions of California Rules of Court, rule 3.766.  We likewise disagree with *Sotelo* to the extent it suggests that a class is not ascertainable where, as here, prospective class members must come forward and establish they are members of the class.  It is well established that " 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages.' [Citation.]" (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 333.)  Indeed, the salient issue is "whether there exist sufficient means for identifying class members *at the remedial stage*" (*Reyes, supra,* 196 Cal.App.3d at pp. 1274-1275, italics added & omitted), not at the class certification or notice stages.

Finally, we find the United States Court of Appeals for the Third Circuit's recent decision in *Carrera v. Bayer Corp.* (3d Cir. 2013) 727 F.3d 300 (*Carrera*), forwarded to us by Party America as "new authority," readily distinguishable.  In that case, the Third Circuit found that a putative class of purchasers of the defendant's diet supplement was not ascertainable because there was insufficient evidence to show that retailer records could be used to identify class members.  (*Id.* at pp. 308-309.)  The court rejected the plaintiff's proposal to use affidavits submitted by putative class members because this process deprived the defendant of the opportunity to challenge class membership.  (*Id.* at p. 309.)  Additionally, the court held that "there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims," and that absent class members could then argue that they are not bound by a judgment because the named plaintiff did not adequately represent them.  (*Id.* at p. 310.)

As a preliminary manner, *Carrera* has been roundly criticized by district courts within the Ninth Circuit.  "It appears that pursuant to [*Carrera*] in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, [*Carrera*] prohibits certification of the class.  While [*Carrera*] may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit.  [Citations.]  In this Circuit, it is enough that the class definition describes 'a set of common characteristics sufficient to allow' a prospective plaintiff to 'identify himself or herself as having a right to recover based on the description.'  [Citation.]"  (*McCrary v. Elations Co.*, LLC (C.D.Cal. Jan. 13, 2014, EDCV 13-00242 JGB (OPx)) 2014 U.S.Dist.LEXIS 8443; see also *Forcellati v. Hyland's, Inc.* (C.D.Cal. Apr. 9, 2014, CV 12-1983-GHK (MRWx)) 2014 U.S.Dist.LEXIS 50600; *Werdebaugh v. Blue Diamond Growers* (N.D.Cal. May 23, 2014, No. 12-CV-2724-LHK) 2014 U.S.Dist.LEXIS 71575; *Brazil v. Dole Packaged Foods, LLC* (N.D.Cal. May 30, 2014, No. 12-CV-01831-LHK) 2014 U.S.Dist.LEXIS 74234; *In re Conagra Foods, Inc.* (C.D.Cal. Aug. 1, 2014, No. CV 11-05379 MMM (AGRx)) 2014

18

U.S.Dist.LEXIS 116103.)  In any event, unlike *Carrera,* here, customers do have a verifiable record of the transaction in question, namely a sales receipt or credit card statement, which can be cross-referenced with Party America's records to determine if the customer's ZIP Code was recorded.

In sum, the trial court applied improper criteria in determining there was no ascertainable class.  Where, as here the class (as currently defined) describes a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description, and plaintiff has proposed an objective method for identifying class members when that identification becomes necessary, there exists an ascertainable class.  (*Bartold, supra,* 81 Cal.App.4th at p. 828; *Hicks, supra,* 89 Cal.App.4th at p. 915.)

DISPOSITION

The order striking and dismissing the class allegations and denying class certification is reversed, and the matter is remanded to the trial court for consideration of whether class certification is proper given our determination that there exists an ascertainable class.  Plaintiff shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


        BLEASE       , Acting P. J.


We concur:


        HULL       , J.


        MURRAY      , J.

19

Filed 3/6/15

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)


| | |
|---|---|
| DIONE AGUIRRE, | C073059 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV 22986) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| AMSCAN HOLDINGS, INC., et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Judge. Affirmed.

Stonebarger Law, Gene J. Stonebarger, Richard D. Lambert and Elaine W. Yan; Patterson Law Group and James R. Patterson for Plaintiff and Appellant.

Atkins & Davidson and Todd C. Atkins for The Consumer Federation of California as Amicus Curiae on behalf of Plaintiff and Appellant

Fox Rothschild, David F. Faustman, Cristina K. Armstrong and Tyreen G. Torner for Defendants and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on February 11, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


   BLEASE              , Acting P. J.


   HULL              , J.


   MURRAY           , J.