Filed 6/2/25  City of Hope etc. v. Blue Cross Blue Shield etc. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CITY OF HOPE NATIONAL MEDICAL CENTER,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>BLUE CROSS BLUE SHIELD OF SOUTH CAROLINA,<br><br>　　　Defendant and Respondent. | B338136<br><br>(Los Angeles County Super. Ct. No. 23AHCV02716) |

　　　APPEAL from an order of the Superior Court of the County of Los Angeles, William A. Crowfoot, Judge.  Affirmed.

　　　Helton Law Group, Edward Stumpp, Ryan Jacobson, Jesse Hutto, and Amro Alkrisat for Plaintiff and Appellant.

　　　Prospera Law, Richard J. Decker, David E. Mead, and Justin R. Knight, for Defendant and Respondent.

# I.  INTRODUCTION

Plaintiff City of Hope National Medical Center (City of Hope) appeals from the trial court's order granting defendant's[1] motion to quash service summons.  According to City of Hope, the motion should have been denied because it made a prima facie showing that the health plan availed itself of the benefits of the forum state by offering health insurance coverage and advertising in California.  In the alternative, City of Hope contends that the trial court abused its discretion by denying the request to conduct jurisdiction-related discovery.  We affirm.

# II.  PROCEDURAL BACKGROUND

## A.  *Complaint*

On November 17, 2023, City of Hope filed a complaint against the health plan and Blue Shield, asserting, among others, causes of action for fraud, negligent misrepresentation, promissory estoppel, and breach of contract.  City of Hope based its claims on the following facts.

From November 14, 2017, through May 23, 2018, City of Hope provided medically necessary and physician-ordered care to a patient who was a member of a health plan insured and

---

[1]  Defendant and respondent is BlueCross BlueShield of South Carolina (the health plan).  The other named defendant, California Physicians' Service dba Blue Shield of California (Blue Shield), was not a party to the motion to quash and is not a party to the appeal.

administered by defendants.[2]  The patient underwent treatment by City of Hope as the result of a transfer to its facilities in the City of Duarte.

At the time City of Hope provided the services to the patient, it had a written provider agreement with Blue Shield (the Blue Shield provider agreement) which obligated it to provide hospital services to Blue Shield's members.  Under the agreement, City of Hope was also obligated to provide hospital services to members of health plans beyond Blue Shield, which had the right to "extend the agreement to local and Blue Cross/Blue Shield National Accounts Programs (like [the health plan]) . . . ."  In return for City of Hope's performance under the provider agreement, defendants were required to reimburse the City of Hope at the discounted rates set forth in the agreement.

As required under the Blue Shield provider agreement, City of Hope contacted defendants to obtain preauthorization for the hospital services that the patient required, or provided hospital services for which pre-authorization was not required.  In reliance on the pre-authorization from defendants, or information provided that authorization was not required, City of Hope provided necessary hospital services to the patient.

City of Hope timely submitted claims for reimbursement to defendants beginning on August 20, 2018.  It then contacted defendants on multiple occasions, between August 2018 and January 2019.  During these contacts, defendants represented that the claims were being processed pursuant to the Blue Shield provider agreement and that additional time for processing was needed.

---

[2]      The complaint referred to the health plan and Blue Shield collectively, without differentiating between the two.

3

Between February 2019 and September 2020, defendants requested copies of medical records, additional information, and corrected claim forms from the City of Hope which were provided. During that time, defendants continued to represent that the claims were being processed.

In October 2019, defendants "denied payment for timely filing, despite having received clearer itemized billing" and all additional requested information within the appropriate timeframes under the Blue Shield provider agreement. Between November 2020 and August 2022, City of Hope made further attempts to obtain reimbursement from defendants and was assured that its claims were being processed.

On September 2, 2022, City of Hope was again advised that defendants were denying payment for timely filing. Although defendants partially paid City of Hope's claims for reimbursement, those payments were not at the rate required by the Blue Shield provider agreement, resulting in an under payment of $1,647,205.52.

B.    *Motion to Quash*

On January 11, 2024, the health plan filed a motion to quash, arguing the California trial court lacked general or specific personal jurisdiction. According to the health plan, the court lacked general jurisdiction over it because it was incorporated and maintained its principal place of business in South Carolina. It also argued that the court lacked specific jurisdiction over it because it did not purposely avail itself of the privileges of doing business in California; City of Hope's claims

against it did not arise from its forum-related conduct; and exercising personal jurisdiction would be unreasonable.

The health plan supported the motion with the declaration of its vice president of major operations, who testified to the following facts.

### 1. Health Plan's Business Organization

The health plan is incorporated in South Carolina with its principal place of business in Columbia, South Carolina. It operates as the local Blue Cross Blue Shield plan in South Carolina, which is the health plan's exclusive service area.

### 2. Business Operations

The health plan is not licensed to conduct business in California; has not sought any license to conduct business in California; does not own or rent any property in California; does not have any telephone listings, sales facilities, or mailboxes in California; does not have an agent for service of process in California; does not direct advertising into California; does not solicit either individuals or groups from California to purchase health insurance or administrative services products; and has no plans, and has taken no steps, to expand its business into California.

The health plan has no employee, agent or representative who travels to California for the purpose of soliciting business there and does not maintain any bank accounts in California. Moreover, the vast majority of the health plan's business operations and revenue are the product of its relationship with

5

South Carolina. And, the health plan is not regulated by California insurance regulators or the California Department of Managed Health Care.

In addition, the health plan does not sell individual health plan contracts to persons living outside of its service area and, with few exceptions, it will only insure or administer health benefits for employer groups that are headquartered in its service area. It also functions as a third-party administrator for certain self-funded health plans located in its service area and, when it functions in that capacity, it does not insure the health plan or retain the insurance risk. Instead, the employer group retains that risk, and the health plan's only role is to provide administrative services to the employer in exchange for an administrative fee. The health plan administers benefit claims according to the express terms and conditions of the employer plan set forth in the employee's evidence of coverage. All of these administrative activities for self-funded plans are performed outside of California and the health plan does not receive any insurance premiums from the self-funded plans or from plan participants or beneficiaries.

3.     Provider Network

The health plan maintains networks of various types of health care providers, including physicians and hospitals. Providers join a network by entering into a contract with the health plan and are therefore referred to as in-network or participating providers. The health plan does not contract with any doctors or hospitals in California to participate in its network

6

of preferred providers, and it does not direct its members to seek treatment in California.

4.  Blue Cross Blue Shield Association

Members of the health plan who seek in-network medical care in California may access the network of providers maintained by one of the local licensees of the Blue Cross Blue Shield Association (the association), whose contracting procedures and decisions are independent of the health plan, which has no control over the entities licensed by the association that operate in California. The health plan is not a subsidiary or corporate affiliate of any Blue Cross Blue Shield association licensee which has a service area located in California.

5.  BlueCard Program

The association has a program allowing members to receive in-network medical care in the service area of another licensee of the association, known as the BlueCard program. The health plan, as an independent licensee of the association, is required to participate in the BlueCard program. It does not contract with any other licensee of the association to make the BlueCard program available to its members.

6.  The Patient's Self-Funded Employer Plan

D.B., the patient in the City of Hope's complaint, is enrolled in a self-funded employee benefit plan (the patient's plan) sponsored by his employer The Reliable Automatic Sprinkler Co.,

7

Inc. (the employer) headquartered in Liberty, South Carolina. The health plan functions as the third-party claim administrator for the patient's plan. Because the patient's plan is self-funded, the health plan does not insure or underwrite the plan's benefits or retain the insurance risk. Instead, the employer retains that risk, and the health plan's only role as administrator is to provide claim administration services to the employer in exchange for an administrative fee pursuant to the written agreement between those two parties. The health plan has no contractual relationship with the members of the patient's plan.

The health plan does not conduct any claim administration activities for the patient's plan in California. No employee of the health plan has travelled to California in connection with any claim dispute over services provided by City of Hope or any dispute over any claim for services provided by City of Hope. The health plan did not direct the patient or any participant or beneficiary of the patient's plan to obtain services from City of Hope.

Because the health plan provides only claim administration services for the patient's plan, it does not receive any insurance premium payments from or on behalf of the patient. The health plan did not initiate any verification of benefits or authorization calls with City of Hope regarding the patient. All eligibility requirements for enrollment and membership in the patient's plan are established by the employer. The health plan has no control over who enrolls in the patient's plan, who the employer hires, or where the employees reside.

C. *Opposition*

City of Hope opposed the motion to quash, arguing that the trial court had specific jurisdiction over the heath plan because it "purposefully availed itself of California by offering health insurance plans that cover insureds needing services in California and identifying City of Hope and other California providers as 'in-network' providers." In support of this assertion, City of Hope cited an unpublished decision of the Los Angeles County Superior Court.

City of Hope further argued that the trial court had general jurisdiction over the health plan because it "has substantial, continuous and systemic contacts with California by offering health insurance plans that cover insureds needing services in California and identifying City of Hope and other California providers as "in-network" providers."

City of Hope also requested leave to complete jurisdictional discovery that it had propounded, arguing that "[t]he discovery being sought is likely to show facts establishing jurisdiction, as the documents sought, and the questions asked, seek information establishing an abundance of contact with California, and a purposeful availment to the jurisdiction given the amount of claims being paid in California, as well as documents evidencing that [the health plan] knowingly entered a services contract with [the employer] with information that there would be employees seeking health care outside of South Carolina."

In support of its opposition, the City of Hope submitted an attorney declaration attaching copies of pages from the health plan's website, and linked sites, showing that the health plan listed the City of Hope as an in-network provider "that any

9

member-enrollee of [the health plan] can access." City of Hope also attached copies of pages from the website for the patient's employer showing that it "employs individuals located in California, as well as many other states that are not South Carolina." And, it asserted that responses to its outstanding jurisdictional discovery "would contain information relating to [the] fact that there are employees of said company located in areas outside of [the health plan's] service area." Finally, City of Hope attached copies of "two advertising brochures accessed through [the health plan's] website, which show that [it] advertises to potential members that they will be able to access healthcare outside South Carolina, nationwide."

D.    *Ruling*

On March 4, 2024, the trial court held a hearing on the motion and granted it, explaining that "[City of Hope] has not shown that [the health plan] has purposefully availed itself of the privilege of conducting business in California. Therefore, the [c]ourt need not analyze whether the exercise of jurisdiction would be reasonable. [¶] Furthermore, although [City of Hope] requests the opportunity to conduct jurisdictional discovery, the [c]ourt does not see how the requested discovery would be relevant. [City of Hope's] request for jurisdictional discovery includes information about the BlueCard program, even though [the health plan's] participation in the BlueCard program is irrelevant for jurisdictional purposes. Insofar as [City of Hope] requests discovery regarding the number of claims from providers in California that are authorized and reimbursed by [the health plan], this information is also irrelevant to the determination of

jurisdiction, whether specific or general.  [Citation.]  [¶]  . . .  [¶]
In light of the foregoing, [the health plan's] motion to quash is
[granted] and [the health plan] is dismissed from the action
without prejudice for lack of jurisdiction."

City of Hope timely filed a notice of appeal.

## III.   DISCUSSION

### A.   *Burdens of Proof and Standards of Review*

On a motion to quash service of summons, the plaintiff has
the initial burden to demonstrate by a preponderance of the
evidence facts justifying the exercise of jurisdiction.  (*Pavlovich v.
Superior Court* (2002) 29 Cal.4th 262, 273 (*Pavlovich*).  If the
plaintiff meets its burden, then the defendant must demonstrate
that the exercise of jurisdiction would be unreasonable.  (*Id*. at
p. 273.)  In reviewing a trial court's jurisdiction ruling, we will
not disturb the court's factual determinations if they are
supported by substantial evidence.  (*Ibid*.)  If there is no conflict
in the evidence, the question of jurisdiction is one of law and we
review the record independently.  (*Ibid*.)  Because we base our
analysis on undisputed record facts only, we review the trial
court's ruling de novo.

"A ruling on a motion to continue in order to allow
additional time to discover jurisdictional facts lies in the trial
court's discretion.  On appeal, we will not reverse the trial court's
ruling unless we find a manifest abuse of that discretion."  (*In re
Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100,
127.)

11

B.    *Personal Jurisdiction*

1.    Legal Principles

"California's long-arm statute (Code Civ. Proc., § 410.10) authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California.  'The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts.  [Citation.] Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  [Citations.]'  [Citation.]

"Personal jurisdiction may be had on either a general (all-purpose) or specific (case-linked) basis.  [Citation.]  A nonresident defendant is subject to the general jurisdiction of the forum if the defendant is '"essentially at home in the forum State,"' which, for corporations, is commonly the place of incorporation or where the corporation maintains its principal place of business.  [Citation.] . . .

"'Specific jurisdiction is very different.  In order for a state court to exercise specific jurisdiction, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*."  [Citations.]  In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  [Citation.]  For this reason, "specific jurisdiction is confined to adjudication of issues

12

deriving from, or connected with, the very controversy that establishes jurisdiction." [Citation.]' [Citation.]

"'When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'" [Citations.] A court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum'" [citations]; and (3) "'the assertion of personal jurisdiction would comport with "fair play and substantial justice"'" [citations].' [Citations.]" (*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1069–1070.)

### 2. General Jurisdiction

As it did in the trial court, City of Hope argues that the court had general jurisdiction over the health plan due to its "substantial, continuous and systemic contacts with California by offering health insurance plans that cover insureds needing services in California and identifying City of Hope and other California providers as 'in-network' providers."

City of Hope has failed to cite to the governing standard for general jurisdiction articulated by the Supreme Court in *Daimler AG v. Bauman* (2014) 571 U.S. 117, that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' [but] whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" (*Id*. at pp. 138–139.) "'For an individual, the paradigm

13

forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' [Citations.] With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.' [Citations.]" (*Id*. at p. 137.)

It is undisputed that South Carolina is the health plan's place of incorporation and principal place of business. The trial court therefore did not err in concluding that it could not exercise general jurisdiction over the health plan.

### 3. Specific Jurisdiction

City of Hope argues that the trial court had specific jurisdiction over the health plan because it "purposefully availed itself of California by offering health insurance plans that cover insureds needing services in California and identifying City of Hope and other California providers as 'in-network' providers." It supports this assertion with citation to the same unpublished superior court decision that it relied upon in the trial court.[3]

---

[3] As City of Hope provides no explanation for its reliance on an unpublished trial court decision, we do not consider that case. (See *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1298–1299, fn. 5 [While "unpublished federal opinions may be cited as persuasive . . . [r]ule 8.1115 of the California Rules of Court prohibits the citation of unpublished opinions of California state courts, with certain limited exceptions"]; *People v. Williams* (2009) 176 Cal.App.4th 1521, 1529 ["We realize that . . . unpublished decisions are now as readily available as published cases . . . . That does not give counsel an excuse to ignore the

City of Hope's specific jurisdiction arguments are all predicated on the health plan's participation in the BlueCard program.  It emphasizes that the health plan "has an agreement with [Blue Shield], the BlueCard [p]rogram, where [the health plan] accesses [Blue Shield's] contracted rates agreed upon between [Blue Shield] and other providers, such as [City of Hope]"and that the health plan "agreed that it would access [Blue Shield's] network of providers in California."  It therefore concludes that the patient's "claim arises out of [the health plan's] agreement with [Blue Shield] to allow its members to access the health care service rates between [Blue Shield] and [its] contracted providers."

We find the reasoning of the federal district courts in opinions such as *Stanford Health Care v. Hawaii Medical Service Association* (U.S. Dist. Ct., N.D., Sept. 2, 2022, No. 21-cv-06720-HSG) 2022 WL 4021759 (*Stanford Health*) persuasive on this issue.  In that case, the plaintiff argued that the defendant health plan's "participation in Blue Cross Blue Shield's BlueCard program sufficiently establishes its jurisdictional contacts with California." (*Id*. at p. *3.)  The *Stanford Health* court disagreed, observing that "courts regularly find a provider's participation in the BlueCard program insufficient to establish specific personal jurisdiction.  [Citations.]" (*Ibid*.)

We agree with the conclusion in *Stanford Health, supra*, 2022 WL 4021759, that a health plan's forum related-activities, through its participation in the BlueCard program, are insufficient to establish specific jurisdiction.  Although that program enables enrolled members in the health plan, such as

rules of court.  Indeed, persistent use of unpublished authority may be cause for sanctions"].)

15

the patient, to receive services from out-of-state providers at contracted rates, the health plan does not contract directly with those providers. Instead, the out-of-state providers, such as City of Hope, contract directly with local health insurers, like Blue Shield, and then agree with those local entities to provide care and treatment, at Blue Shield contracted rates, to patients whose plans participate in the BlueCard program. (See also *Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Minnesota* (9th Cir. 2019) 787 Fed.Appx. 417, *418 (*Healthcare Ally Management*) [describing the relationship between California and defendant, a health care plan that acted as a plan administrator for six patients and issued insurance plans in Minnesota to Minnesota residents for three patients, all of whom received medical care in California, as "merely 'attenuated' . . . [and] insufficient evidence of purposeful availment"].)

In addition, any advertising or marketing in which the health plan may have engaged through its website regarding the availability of in-network providers in other states was directed at potential plan enrollees within its service area, namely, South Carolina. And, the health plan's evidence showed that it did not advertise in California or market its plans there. Thus, the health plan's forum-related activities stemming from its participation in the BlueCard program do not demonstrate that it purposely availed itself of the benefits of California.

Nor do we agree that the controversy here arose from the health plan's forum-related activities. The complaint alleges claims that arise from the failure to pay Blue Shield contract rates and misrepresentations made during the course of the protracted claim processing. Although City of Hope alleges that defendants made misrepresentations in California, based on

16

services rendered in California, the complaint does not differentiate between Blue Shield and the health plan when alleging misrepresentations made during the claim process. Further, the health plan submitted evidence that none of its communications regarding verification of benefits or authorizations with City of Hope were initiated by the health plan, facts which City of Hope did not dispute. In any event, such communications are insufficient to support the exercise of personal jurisdiction. (See *Healthcare Ally Management, supra,* 787 Fed.Appx. at *418 [concluding that telephone calls initiated by the health care provider to the defendant, the defendant's confirmation that patients were covered by insurance policies, and the mailing of a denial-of-benefits letter were insufficient to demonstrate purposeful availment].)

The trial court therefore did not err in concluding that City of Hope's claims did not arise from the health plan's forum-related activities.

C.  *Jurisdictional Discovery*

City of Hope next contends that the trial court abused its discretion in denying leave to complete the jurisdictional discovery propounded on the health plan. According to City of Hope, the "discovery being sought is likely to show facts establishing jurisdiction, as the documents sought, and the questions asked, seek information establishing an abundance of contact with California, and a purposeful availment to the jurisdiction . . . ."

"'A trial court has the discretion to continue the hearing on a motion to quash service of summons for lack of personal

17

jurisdiction to allow the plaintiff to conduct discovery on jurisdictional issues.' [Citation.] 'In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." [Citation.] Because the decision to grant a continuance is a discretionary decision, '[o]n appeal, we will not reverse the trial court's ruling unless we find a manifest abuse of that discretion.' [Citation.]" (*Preciado v. Freightliner Custom Chassis Corp*. (2023) 87 Cal.App.5th 964, 972.)

City of Hope maintains that the discovery it sought from the health plan would yield information showing: the amount of claims being paid in California; that health plan entered into the claim administrator agreement with the employer knowing that it had employees working outside South Carolina; the extent to which California medical providers are being advertised to health plan members; and the marketing being done to potential members of the health plan, which advertise the fact that they will be covered for health care sought outside of South Carolina, including in California.

The trial court concluded that the discovery City of Hope had propounded was irrelevant to the issues before it concerning jurisdiction, and City of Hope does not adequately explain how that information would likely demonstrate either general or specific jurisdiction over the health plan. For example, even if City of Hope could show that the health plan contracted with the employer in South Carolina, knowing that it had employees in other states, City of Hope does not link that evidence to the necessary showing on the issues of (1) the health plan's forum-related activity in California or (2) whether City of Hope's claims

18

for underpayment and misrepresentation arise from the health plan's activities in California. Similarly, City of Hope does not connect the information on in-network provider advertising or marketing—directed at members, potential members, or employers in South Carolina—to forum-related activity in California.

Accordingly, we conclude that City of Hope has failed to demonstrate the trial court abused its discretion in denying it leave to complete outstanding jurisdictional discovery.

## IV.  DISPOSITION

The order granting the motion to quash service of summons is affirmed. The health plan is awarded costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.

We concur:


BAKER, Acting P. J.



MOOR, J.