# IN THE SUPREME COURT OF CALIFORNIA

DIANA NIEVES NOEL,
Plaintiff and Appellant,

v.

THRIFTY PAYLESS, INC.,
Defendant and Respondent.

S246490

First Appellate District, Division Four
A143026

Marin County Superior Court
CIV1304712

---

July 29, 2019

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Chin, Corrigan, Liu, Cuéllar, Kruger, and Groban concurred.

---

NOEL v. THRIFTY PAYLESS, INC.

S246490

Opinion of the Court by Cantil-Sakauye, C. J.

This case is a putative class action brought on behalf of retail purchasers of an inflatable outdoor pool sold in packaging that allegedly misled buyers about the pool's size. We must decide whether the trial court abused its discretion when it denied the representative plaintiff's motion for class certification on the basis that he had not supplied evidence showing how class members might be individually identified when the time came to do so. The Court of Appeal upheld this ruling. It reasoned that this evidence was necessary to ensure that proper notice would be given to the class, and that without it, the trial court could appropriately conclude that plaintiff had not satisfied the ascertainability requirement for class certification.

We conclude that the trial court erred in demanding that plaintiff offer such evidence to satisfy the ascertainability requirement. Plaintiff's proposed class definition articulates an ascertainable class, in that it defines the class "in terms of objective characteristics and common transactional facts" that make "the ultimate identification of class members possible when that identification becomes necessary." (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 915 (*Hicks*).) As we will explain, the ascertainability requirement does not incorporate the additional evidentiary burden that the courts below would have imposed. We therefore reverse the

1

judgment of the Court of Appeal and remand the matter for further proceedings consistent with our opinion.

## I. BACKGROUND

In November 2013, plaintiff James Noel[1] filed a verified complaint in Marin County Superior Court, alleging claims under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL), the false advertising law (Bus. & Prof. Code, § 17500 et seq.) (FAL), and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA).

These claims arose out of Noel's purchase of an inflatable outdoor pool marketed as Kids Stuff Ready Set Pool 8FT X 25IN (hereinafter Ready Set Pool) from a Rite Aid drugstore in San Rafael.[2] Noel alleges that his purchase of the pool was influenced by a photograph that appears on its packaging. This photo, as it appears within the complaint, indicates that the pool can handily accommodate several adults when inflated and filled:

---

[1] James Noel died while this action was pending before the Court of Appeal and has been replaced as plaintiff by his widow, Diana Nieves Noel. To avoid confusion, our opinion refers to both as "Noel," and uses the masculine pronoun whenever referring to plaintiff.

[2] Defendant Thrifty Payless, Inc., operates the Rite Aid drugstore chain. Our opinion refers to defendant as "Rite Aid."



Noel asserts that when he set up the pool, he discovered that it was much smaller than the photograph on the box conveys. To demonstrate this, the complaint also includes another photograph of the pool, as inflated and filled:



Noel's claims under the UCL, the FAL, and the CLRA are premised on this alleged discrepancy.[3]

In May 2014, Noel moved to certify a class defined as "[a]ll persons who purchased the Ready Set Pool at a Rite Aid store

---

[3]     Rite Aid responds that Noel did not set up the pool correctly.

located in California within the four years preceding the date of the filing of this action." By that time, Noel had conducted discovery that yielded the total number of Ready Set Pools that Rite Aid had sold in California during the class period (20,752, with 2,479 of the pools being returned), and the revenue obtained through these sales ($949,279.34). Noel's discovery did not, however, delve into whether Rite Aid kept records of these transactions, or into the more general subjects of whether and how Rite Aid collected contact information from its customers and how it disseminated information to them.[4]

In opposing class certification, Rite Aid argued that Noel had not demonstrated the existence of an ascertainable class — a well-established prerequisite for class certification under section 382 of the Code of Civil Procedure. (See, e.g., *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*); *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 318 (*In re Tobacco II*); *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*); *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*); *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 (*Richmond*); *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 (*Vasquez*); *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 (*Daar*).) Specifically, Rite Aid asserted that to show an ascertainable class, Noel bore the burden of introducing evidence in connection with his certification motion that would show how members of the putative class could be identified later in the proceeding, so they

---

[4] In his deposition, Noel testified that he had not retained the store receipt associated with his purchase of a Ready Set Pool, but had bought the pool using a debit card and possessed bank records containing an entry consistent with such a transaction.

could be provided with notice of the pending action. In Rite Aid's view, Noel's failure to supply such proof doomed his certification effort.

Noel responded that he had no obligation to offer evidence on this issue in order to secure certification of the class he proposed. His briefing in support of class certification described various ways in which notice of the action might be distributed to absent class members when the time came to do so.[5] He explained that "modern day point of sale systems used by major retailers such as Rite Aid can already track purchases by customers who pay by credit card. Many of those customers likely belong to Rite Aid's reward savings program, which means Rite Aid has contact information for these individuals. Thus, Rite Aid should be quite capable of sending individual notices to these purchasers." Noel also claimed that Rite Aid "sends weekly e-mails to subscribers alerting them to new sales and deals" and mails out weekly advertisements to California customers, providing two other avenues through which notice could be provided to absent class members. However, Noel pointed to no evidence in the record (whether in the form of declarations, interrogatory responses or admissions by Rite Aid, deposition testimony, or information presented via a request for judicial notice) that substantiated his assertions regarding how class members could be notified. He did not, for example, supply the trial court with specific proof that, through a loyalty

---

[5] Noel advanced certain methods of identifying class members to explain why, in his view, published notice (although possible) might be unnecessary. (See Civ. Code, § 1781, subd. (c)(2).)

program, Rite Aid has access to pertinent customer contact information.

The trial court denied the motion for class certification. The court's order explained that "[w]hile the court might reasonably infer that the class, as defined by [p]laintiff, could be ascertained based on common business practices and record keeping, [p]laintiff has presented no evidence on this subject. Absent some evidence as to what method or methods will be utilized to identify the class members, what records are available, (either from [d]efendant, the manufacturer, or other entities such as banks or credit institutions), how those records would be obtained, what those records will show, and how burdensome their production would be, the court is without sufficient evidence to determine whether the proposed class is ascertainable. Accordingly, [the] motion to certify must be denied."

The trial court also declined to certify a class in connection with Noel's CLRA claim for a second, separate reason. In the court's view, common issues did not predominate with this claim because reliance had to be proved individually as to each class member. Finally, the court also found "that a class action is not superior to numerous individual actions, in light of the above findings. The class action will be no more efficient than individual actions in light of the individual issues that must be presented on the issue of reliance and damages." The court's order was not clear whether this last determination applied only to the CLRA class, as might be inferred by the reference to reliance, or to the action as a whole.

After Noel appealed (see *Linder*, *supra*, 23 Cal.4th at p. 435 [denial of certification to an entire class is an appealable

order]), the Court of Appeal found no abuse of discretion in the denial of class certification. (*Noel v. Thrifty Payless, Inc.* (2017) 17 Cal.App.5th 1315, 1321 (*Noel*).) Addressing the superior court's determination that Noel had not shown an ascertainable class, the reviewing court diagnosed "the underlying problem with the class certification motion" as "class counsel's premature filing of the motion without first conducting sufficient discovery to meet its burden of demonstrating there are means of identifying members of the putative class so that they might be notified of the pendency of the litigation." (*Ibid*.) The Court of Appeal emphasized that Noel had "submitted nothing offering a glimmer of insight into who purchased the pools or how one might find that out. He neither described nor produced Rite Aid's records . . . nor did he indicate how much . . . information those records might reveal. Unless Noel could propose some realistic way of associating names and contact information with the 20,000-plus transactions identified by interrogatory response, there remained a serious due process question in certifying a class action." (*Id*., at p. 1328.) The Court of Appeal continued, "While Noel was not required to actually identify the 20,000-plus individuals who bought pools, his failure to come up with any *means* of identifying them was a legitimate basis for denying class certification." (*Ibid*.)[6]

---

[6] The Court of Appeal stressed that "the modest evidentiary burden" (*Noel, supra,* 17 Cal.App.5th at p. 1333) it would impose upon plaintiffs seeking class certification was "something that, with proper foresight in the early stages of a class proceeding, can be addressed quite easily, especially if it is given the same level of care and attention as, for example, drafting a precise description of the class" (*id.,* at pp. 1333-1334).

The Court of Appeal sought to harmonize its understanding of the ascertainability requirement with the views of other courts. The Court of Appeal noted that the court in *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1 (*Estrada*) had regarded a class as " 'ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on the description.' " (*Noel*, *supra*, 17 Cal.App.5th at p. 1326, quoting *Estrada*, at p. 14, italics omitted.) The Court of Appeal also observed that *Sotelo v. MediaNews Group, Inc.* (2012) 207 Cal.App.4th 639 (*Sotelo*) had prescribed a "more demanding standard" for ascertainability (*Noel*, at p. 1327), having explained, " 'The ascertainability requirement is a due process safeguard, ensuring that notice can be provided "to putative class members as to whom the judgment in the action will be res judicata." [Citation.] "Class members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]" [Citation.] In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members.' " (*Noel*, at p. 1327, italics omitted, quoting *Sotelo*, at pp. 647-648.) Addressing these different formulations, the Court of Appeal in this case endorsed the *Sotelo* approach — describing it as "a more pragmatic approach in determining ascertainability, and one which comports with the rationale underlying the ascertainability requirement" (*Noel*, at p. 1327) — but also sought to reconcile these views by characterizing "*Sotelo*'s three-factor test as a refinement of the ascertainability prong of the *Estrada* test when that prong . . . requires a closer look." (*Noel*, at p. 1329.)

Although the appellate court below sought to reconcile the views of the Courts of Appeal, it recognized that some tension might exist between its analysis and that in *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290 (*Aguirre*). The Court of Appeal in *Aguirre* held that a superior court had erred when it declined to certify a putative consumer class on ascertainability grounds. (*Id.*, at p. 1299.) The *Aguirre* court explained that a "representative plaintiff need not identify, much less locate, individual class members to establish the existence of an ascertainable class. [Citations.] *Nor must the representative plaintiff establish a means for providing personal notice of the action to individual class members.*" (*Id.*, at p. 1301, italics added.) The Court of Appeal in this case sought to bridge the distance between its views and those expressed by the *Aguirre* court by noting that the class in *Aguirre* could have included up to a million members, whereas there were only approximately 20,000 purchasers of the Ready Set Pool. With the larger class, the Court of Appeal surmised, "perhaps assuming personal notice cannot be given was realistic, but with a class size of 20,000 we are not so quick to make that assumption." (*Noel, supra*, 17 Cal.App.5th at p. 1331.) The Court of Appeal nevertheless conceded that its view of the ascertainability requirement "may be contrary to that of *Aguirre*." (*Id.*, at p. 1333.)

The Court of Appeal also found no abuse of discretion in the superior court's refusal to certify a CLRA class on the basis that common issues did not predominate. (*Noel, supra*, 17 Cal.App.5th at pp. 1334-1336.) This aspect of the trial court's order is not presently before us. Turning to the lower court's determination that a class action was not a superior vehicle for pressing the claims at issue, the Court of Appeal noted the

ambiguous scope of this ruling. (*Id.*, at p. 1336.) The court also recognized Court of Appeal precedent holding that superiority is not required for a class action brought under the CLRA. (*Noel*, at p. 1336, citing *Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 727-728; see also *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 132-136.) Nevertheless, the court found any error harmless: "If the court intended to include lack of superiority as a reason for rejecting class certification on the CLRA cause of action, that was error, but harmless due to the other valid reasons for denying class certification. If the court intended its negative superiority finding to apply only to the FAL and UCL causes of action, then it was supported by the evidence and did not amount to an abuse of discretion." (*Noel*, at p. 1336.)

We granted review to clarify what the ascertainability requirement for class certification involves.

## II. DISCUSSION

In determining whether the trial court abused its discretion, we begin by surveying the relevant general principles applicable to class certification. We then turn to case law that has considered what it means for a class to be ascertainable. Drawing from this review, we conclude that the functions properly assigned to the ascertainability requirement are best served by regarding a class as ascertainable when it is defined "in terms of objective characteristics and common transactional facts" that make "the ultimate identification of class members possible when that identification becomes necessary." (*Hicks*, *supra*, 89 Cal.App.4th at p. 915.) This standard was satisfied here because the class definition provided a basis for class members to self-identify. The courts below erred in importing

an additional evidentiary burden into the ascertainability requirement.

## A. General Principles

In reviewing a class certification order, our inquiry is "narrowly circumscribed." (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) " 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. ' " (*Ibid.*) "Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' " (*Linder*, *supra*, 23 Cal.4th at p. 436; see also *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522, 537 ["[a] certification decision is reviewed for abuse of discretion, but when the supporting reasoning reveals the court based its decision on erroneous legal assumptions about the relevant questions, that decision cannot stand"].)

Here, plaintiff sought certification of a class pursuant to section 382 of the Code of Civil Procedure, which provides a general authorization for class actions, and section 1781 of the Civil Code, the provisions of which govern class suits brought under the CLRA and inform class action practice more

generally.  (See *Linder, supra*, 23 Cal.4th at p. 437; *Vasquez, supra*, 4 Cal.3d at p. 820.)

Section 382 of the Code of Civil Procedure authorizes a class action when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  "[W]e have articulated clear requirements for the certification of a class" under this statute. (*Brinker, supra*, 53 Cal.4th at p. 1021.)  "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives."  (*Ibid.*)  "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Linder, supra*, 23 Cal.4th at p. 435.)  Regarding the first of these factors, we have recognized " '[a]s a general rule' " that " 'if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker*, at p. 1022; see also *Daar, supra*, 67 Cal.2d at p. 706.)  Relatedly, "In certifying a class action, the court must also conclude that litigation of individual issues, including those arising from affirmative defenses, can be managed fairly and efficiently." (*Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 28-29.)  Finally, other considerations relevant to certification "include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and

12

whether the class approach would actually serve to deter and redress alleged wrongdoing." (*Linder*, at p. 435.)

The CLRA includes its own set of requirements for class certification. Under this statute, "The court shall permit [a class] suit to be maintained on behalf of all members of the represented class if all of the following conditions exist: (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b).) We have not specifically identified ascertainability as an essential element for class certification under the CLRA, as we have for class actions authorized by section 382 of the Code of Civil Procedure. Yet the Courts of Appeal have routinely demanded that CLRA plaintiffs demonstrate the existence of an ascertainable class (see, e.g., *Apple Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1116, fn. 2; *In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 128, fn. 12), and this requirement is fairly subsumed in the need to have a coherent "represented class" to pursue a class action under the statute (Civ. Code, §1781, subd. (b)).

**B. Past Discussions of Ascertainability**

Although our case law has been clear that a plaintiff must show an ascertainable class as a prerequisite to class certification, neither our decisions nor those of the Courts of Appeal have been as pellucid in explaining what this requirement entails.

### 1. Weaver

Our first discussion of class ascertainability appeared more than 70 years ago — a time when class action litigation remained in a formative stage. (See Miller, *The Preservation and Rejuvenation of Aggregate Litigation: A Systemic Imperative* (2014) 64 Emory L.J. 293, 294.) In this milieu, the four plaintiffs in *Weaver v. Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 (*Weaver*) brought a lawsuit to recover statutory penalties for an allegedly wrongful refusal to admit them to the 1947 Rose Bowl football game. (*Id.*, at p. 835.) The plaintiffs sought to pursue the matter as a representative suit on behalf of themselves and hundreds of other would-be patrons who also had waited in line for tickets that ended up being allocated through assertedly improper private sales. (*Id.*, at p. 836.)

We agreed with the superior court's determination that the suit was not an appropriate representative action. (*Weaver*, *supra*, 32 Cal.2d at p. 835.) We stressed, "In the present case there is no ascertainable class, such as the stockholders, bondholders, or creditors of an organization. Rather, there is only a large number of individuals, each of whom may or may not have, or care to assert, a claim against the operators of the 1947 Rose Bowl Game for the alleged wrongful refusal of admission thereto. Each of such claimants must establish separately that he was refused admission, and that such refusal was wrongful . . . . While each would be 'similarly situated' in that his cause of action arises under the same statute, his recovery would rest on a distinct premise correlative with varying proof as to the facts of his particular case. In such circumstances there is not the necessary 'common or general interest' in the subject-matter of the litigation appropriate to the

maintenance of a representative action as that type of proceeding has been analyzed in the adjudicated cases." (*Id.*, at pp. 839-840.)

Our opinion in *Weaver, supra,* 32 Cal.2d 833, also noted "one further point" that provided additional support for the trial court's ruling. (*Id.*, at p. 842.) We observed, "In cases properly falling within the category of representative litigation, the judgment or decree would be res judicata for or against the class sought to be represented. [Citations.] But that result could not be extended to entirely separate causes of action, such as the four plaintiffs have pleaded here, so as to bind 'several hundred individuals' who are not named, and who are, so far as the complaint shows, unknown and unascertainable. Rather, these unknown parties are ascertainable only insofar as each may come forward and individually present proof of all the facts necessary to authorize a recovery in accordance with the merits of his particular case, and judgment in one would by no means be a judgment in any other. Plaintiffs here do not claim to represent an association or protective committee nor do they present any reasonable basis for ascertaining the members of the alleged class for whom they seek to act in this litigation. [Citation.] In short, plaintiffs' complaint can be regarded as no more than an invitation to such persons as may be interested to join with them in this action in seeking relief 'arising out of the same transaction or series of transactions' [citation], but such situation furnishes no ground for the maintenance of a representative proceeding. . . ." (*Id.*, at pp. 842-843.)

*2.* Chance

We next discussed ascertainability in the context of a representative proceeding in *Chance v. Superior Court* (1962)

58 Cal.2d 275 (*Chance*). The plaintiffs in *Chance* sued on behalf of themselves and all other owners of promissory notes secured by 2,139 trust deeds on specific parcels within a tract of land. (*Id.*, at pp. 278-279.) The plaintiffs alleged that they and other members of the putative class had been ensnared in a scheme in which each deed of trust was associated with only a miniscule parcel. (*Id.*, at p. 280.) The plaintiffs sought a collective foreclosure, the proceeds of which would help mitigate their investment losses. (*Id.*, at p. 283.)

In concluding that this suit could be brought as a representative action, we first addressed whether the requisite community of interest existed among class members. We concluded that it did. (*Chance*, *supra*, 58 Cal.2d at pp. 284-286.) Only later did we discuss ascertainability. Our analysis provided, "[A]ll of the members of the instant class are ascertainable (compare with *Weaver v. Pasadena Tournament of Roses Assn*, *supra*, 32 Cal.2d 833, 839-840, 843), and it is assumed that they will be given notice of the pending class foreclosure action by registered mail or other like reliable method [citation], thereby being afforded an opportunity to decide whether to appear and argue for any and all appropriate or available forms of redress desirable from their individual points of view, against the named defendants." (*Id.*, at p. 290.)

### 3. Daar

Our most extensive discussion of class ascertainability appeared five years after *Chance*, in *Daar*, *supra*, 67 Cal.2d 695. The plaintiff in *Daar* sued the Yellow Cab Company for allegedly overcharging him and other taxi customers. (*Id.*, at pp. 699-700.) He sought certification of both a subclass of customers who had paid for taxi services with script book coupons, and another

subclass of customers who had paid with cash. Regarding the first of these subclasses, plaintiff alleged "that the names and addresses of all purchasers and users of script books can be definitely ascertained from defendant's books and records." (*Id.*, at p. 700.) No similar assertions relevant to identification appeared in the class allegations pertaining to cash customers, as related in a separate count. (*Id.*, at p. 702.)

The defendant in *Daar* had successfully demurred to the complaint. (*Daar*, *supra*, 67 Cal.2d at p. 698.) We reversed, holding that the allegations in *each* count stated facts sufficient for class treatment under section 382 of the Code of Civil Procedure. (*Daar*, at pp. 714, 717.) In relating the background legal principles that guided our analysis, we explained that "it uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Id.*, at p. 704.) In describing the first of these requirements, we cited to our decisions in *Weaver*, *supra*, 32 Cal.2d 833, and *Chance*, *supra*, 58 Cal.2d 275, and further explained that "[a]pplicable precedents indicate that in observing the ascertainable class requirement they are at the same time giving recognition to the principle that a group of individuals' rights to recover, each of which is based on a separate set of facts, cannot be determined by a judgment in a class action. To put it in another way, although a judgment in a class action is res judicata as to claims of members of the class represented therein [citations], res judicata will not preclude subsequent actions by those whose rights to recover are based upon different facts. Therefore, such

individuals cannot properly be brought under the umbrella of a class action." (*Daar*, at pp. 704-705.)

As in *Weaver*, the description of ascertainability in *Daar*, *supra*, 67 Cal.2d 695 did not consistently distinguish this prerequisite for class certification from the need to establish a community of interest among the class. Portions of our opinion in *Daar* instead cast these elements as intertwined, such as our explanation at one juncture that "whether there is an ascertainable class depends in turn upon the community of interest among the class members in the questions of law and fact involved." (*Id.*, at p. 706.)

*Daar*, *supra*, 67 Cal.2d 695 did clarify certain aspects of the ascertainability inquiry, however. We explained in *Daar* that the requirement that a plaintiff show an ascertainable class does not subsume a "necessity of identifying the individual members of such class as a prerequisite to a class suit. If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment. The fact that the class members are unidentifiable at this point will not preclude a complete determination of the issues affecting the class." (*Id.*, at p. 706.) In the *Daar* matter itself, "Presumably an accounting in the suit at bench will determine the total amount of the alleged overcharges; any judgment will be binding on all the users of taxicabs within the prior four years. However, no one may

recover his separate damages until he comes forward, identifies himself and proves the amount thereof." (*Ibid.*)[7]

### 4. Subsequent decisions of this court

*Daar, supra,* 67 Cal.2d 695 remains our most detailed explication of the ascertainability requirement. In the half-century since *Daar,* we have frequently mentioned the need to show an ascertainable class as a prerequisite to certification. (E.g., *Brinker, supra,* 53 Cal.4th at p. 1021; *In re Tobacco II, supra,* 46 Cal.4th at p. 318; *Sav-On, supra,* 34 Cal.4th at p. 326; *Linder, supra,* 23 Cal.4th at p. 435; *Richmond, supra,* 29 Cal.3d at p. 470; *Vasquez, supra,* 4 Cal.3d at p. 809.) In some instances, we have explained how the class before us satisfied this requirement. (E.g., *Richmond,* at p. 478 [observing that the members of the class "are easily identified and located"]; *Vasquez,* at p. 811 [noting that the names and addresses of the approximately 200 persons in the proposed class "may be ascertained from defendants' books"]; *Occidental Land, Inc. v. Superior Court* (1976) 18 Cal.3d 355, 360 ["class members can be readily identified by a search of public records"].) On two other occasions, we have referenced ascertainability in finding no abuse of discretion in trial courts' *refusals* to certify proposed

---

[7] Our opinion in *Daar, supra,* 67 Cal.2d 695 also quoted a leading treatise's observation that " '[a] distinction is sometimes drawn between the maintenance of the suit and its binding effect on the absent parties. A sufficient pleading of the conditions may withstand a demurrer and satisfy the court that the action should proceed. But if the judgment is thereafter collaterally attacked by an absent party, a more careful scrutiny of its representative character may be made in determining whether it is res judicata.' " (*Id.,* at p. 706, quoting 2 Witkin, Cal. Procedure (1954) Representative or Class Suits, § 99, p. 1080.)

classes. In both of these cases, however, there were multiple grounds for denying class certification, which meant that our analysis did not squarely address whether the failed class was or was not ascertainable. (*Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 448-449; *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 912-913.)

We have only twice offered additional explanations of what it means for a class to be ascertainable. Both of these descriptions were of a summary nature. In *Vasquez, supra,* 4 Cal.3d 800, we stated that "[a]s to the necessity for an ascertainable class, the right of each individual to recover may not be based on a separate set of facts applicable only to him." (*Id.,* at p. 809.) More recently, the majority opinion in *In re Tobacco II, supra,* 46 Cal.4th 298 characterized ascertainability as a "preliminary step" to class certification, which requires that a class " ' "be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class." ' " (*Id.,* at p. 323, quoting *Miller v. Janssen Pharmaceutica Products, L.P.* (S.D.Ill. 2007) 2007 WL 1295824, p. *5.) Class ascertainability was not an issue before us in *In re Tobacco II,* however, and we had no occasion in that case to exhaustively consider how the concept should be understood.

To summarize, our case law has recognized an ascertainability requirement for class actions, but we have not clearly articulated what this requirement entails or how it is distinct from other prerequisites for certification — especially the need to show a community of interest among class members. Our decisions have also abstractly tethered class ascertainability to due process considerations that include, but are not necessarily limited to, the need to provide absent class

members with adequate notice. But this connection has not led to a consensus among the Courts of Appeal regarding what the ascertainability requirement entails.

> 5. *The views of the Courts of Appeal regarding ascertainability*

Following our decision in *Daar*, *supra*, 67 Cal.2d 695, the Courts of Appeal have developed two basic views of the ascertainability requirement.

One view of ascertainability concentrates on the proposed class definition itself. This view was applied in *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816 (*Bartold*), superseded by statute on another point as stated in *Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 524. The *Bartold* court explained that "[a] class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." (81 Cal.App.4th at p. 828.) This basic view of ascertainability has been reiterated by numerous other Courts of Appeal, including the courts in *Estrada*, *supra*, 154 Cal.App.4th at page 14 and *Aguirre, supra*, 234 Cal.App.4th at pages 1299 to 1300. (See also *Aguirre*, at p. 1300 [listing cases].) A similar formulation regards a class as ascertainable when it is defined "in terms of objective characteristics and common transactional facts" that make "the ultimate identification of class members possible when that identification becomes necessary." (*Hicks, supra*, 89 Cal.App.4th at p. 915.)

The second basic view of ascertainability entails a more exacting inquiry. One such articulation regards the ascertainability requirement as calling for an examination into "(1) the class definition, (2) the size of the class and (3) the

means of identifying class members." (*Miller v. Woods* (1983) 148 Cal.App.3d 862, 873 (*Miller*); see also *Noel, supra,* 17 Cal.App.5th at p. 1324, *Sotelo, supra,* 207 Cal.App.4th at p. 648; *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1274.) Consistent with this view, it has been said that "[c]lass members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records." (*Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 932 (*Rose*).) On its face, the quoted language from *Rose* could be understood as specifying a *sufficient*, as opposed to a *necessary*, basis for finding an ascertainable class within the *Miller* framework.[8] But some courts, drawing from *Rose*'s focus on the mechanics of identifying class members, have gone further and required a class plaintiff to make a specific factual or evidentiary showing in order to show an ascertainable class. The Court of Appeal below, for example, regarded plaintiff as obligated to provide proof substantiating a specific mechanism or mechanisms through which class members could be identified

---

[8]   The court in *Rose, supra,* 126 Cal.App.3d 926, ultimately determined that "[t]he identity of the class . . . is readily ascertainable from . . . departmental records" — a conclusion that did not necessarily rule out other avenues for showing an ascertainable class. (*Id.,* at p. 932; see also *Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 240 [applying the *Rose* standard and finding an ascertainable class]; *Mora v. Big Lots Stores, Inc.* (2011) 194 Cal.App.4th 496, 504 [same]; *Bomersheim v. Los Angeles Gay & Lesbian Center* (2010) 184 Cal.App.4th 1471, 1481 [same]; *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1532-1533 [same]; *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1334 [same]; *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1206-1208 [same]; *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 135-136 [same].)

so as to be personally notified of the class proceeding. (*Noel, supra*, 17 Cal.App.5th at pp. 1329, 1333.) The absence of "official" records identifying class members was central to the analysis in *Sotelo, supra*, 207 Cal.App.4th 639, in which the Court of Appeal affirmed a denial of class certification due to the representative plaintiffs' perceived failure to show an ascertainable class. (*Id.*, at p. 650.) Other Courts of Appeal, in affirming denials of class certification on ascertainability grounds, have emphasized that the representative plaintiff or plaintiffs had not shown that individual class members could be readily identified without unreasonable expense or time. (E.g., *Cruz v. Sun World Internat., LLC* (2015) 243 Cal.App.4th 367, 382; *Hale v. Sharp Healthcare* (2014) 232 Cal.App.4th 50, 59-61.)

The differences between these two basic approaches to ascertainability can be somewhat blurred in practice. And as previously noted, the Court of Appeal below attempted to synthesize these views. (*Noel, supra,* 17 Cal.App.5th at p. 1329.) But as this case illustrates, a court's choice between the two views can be critical. A construction of ascertainability that assigns the plaintiff in a putative class action an affirmative responsibility to show the existence of records (or some other mechanism or channel) through which individual class members can be identified for the purpose of providing them with personal notice of the proceeding may function to defeat class certification in a variety of situations. A plaintiff may not anticipate the need to adduce such proof at the time class certification is sought, meaning that no precertification discovery will have occurred on this point. This kind of evidentiary requirement also can prevent certification when a

plaintiff's discovery efforts, albeit substantial, produce inadequate evidence from the perspective of the court.

An additional burden emerges when the plaintiff must demonstrate that individual members of the proposed class can "be readily identified without unreasonable expense or time." (*Rose, supra*, 126 Cal.App.3d at p. 932.) With such a requirement, class certification may be denied on ascertainability grounds due to expected complexities in the provision of notice, or in distinguishing class members from nonmembers — without close consideration necessarily being given to whether these difficulties are actual, as opposed to merely hypothetical, or whether they are so intransigent and pervasive that they would make a class proceeding unmanageable, or undesirable in light of the plausible alternatives.

### 6. *The views of the federal courts regarding ascertainability*

Federal courts have wrestled with ascertainability issues in cases where plaintiffs have sought certification of a class under rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.).[9] Although this rule does not expressly demand an ascertainable class, most courts tasked with applying it have regarded ascertainability as an implicit " 'threshold' " requirement for certification of a class under Rule 23(b)(3). (*Sandusky Wellness Center v. MedTox Scientific* (8th Cir. 2016) 821 F.3d 992, 995; but see *Briseno v. ConAgra Foods, Inc.* (9th Cir. 2017) 844 F.3d 1121, 1124-1125, fn. 4 ["we have addressed the types of alleged definitional deficiencies other courts have referred to as

---

[9] All further references to "Rule 23" and its subparts are to the Federal Rules of Civil Procedure (28 U.S.C.).

'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements"].) In this context, competing views regarding ascertainability have emerged within the federal system, just as they have within the courts of this state.

A stringent view of ascertainability is most closely associated with decisions produced by the United States Court of Appeals for the Third Circuit. (See *Marcus v. BMW of North America, LLC* (3d Cir. 2012) 687 F.3d 583, 592-594 (*Marcus*); *Hayes v. Wal-Mart Stores, Inc.* (3d Cir. 2013) 725 F.3d 349, 354-356; *Carrera v. Bayer Corp.* (3d Cir. 2013) 727 F.3d 300, 305-312.) Under this approach, a plaintiff seeking class certification under Rule 23(b)(3) must show not only that the class has been "defined with reference to objective criteria," but also that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." (*Hayes*, at p. 355.) Courts adopting this conception of ascertainability have refused to certify (or upheld refusals to certify) consumer classes in situations such as the one presently before this court — in which it is unlikely, or at least unproven, that individual purchasers of the commodity at the heart of the dispute would have retained their receipts or other proof of purchase, the defendant did not maintain a specific list of purchasers, and the putative class representative offered no proof when seeking certification "that a single purchaser of [the product] could be identified using records of customer membership cards or records of online sales." (*Carrera*, at p. 309; see *id.*, at pp. 304, 312.)

Other courts have pushed back on this stringent approach to ascertainability. The United States Court of Appeals for the Seventh Circuit is among the federal courts that assign a narrower function to the ascertainability requirement. Its

25

decision in *Mullins v. Direct Digital, LLC* (7th Cir. 2015) 795 F.3d 654 (*Mullins*) offers a thorough, and in our view illuminating, assessment of how ascertainability should be understood in connection with class certification. Because the analysis in *Mullins* is particularly helpful in resolving the issue before us, we discuss its facts and reasoning at some length below. (See *Linder*, *supra*, 23 Cal.4th at pp. 437-439 [consulting federal court decisions construing Rule 23 for guidance in dealing with similar class certification issues arising under state law].)

The plaintiff in *Mullins*, *supra*, 795 F.3d 654, secured the certification of a consumer class under Rule 23(b)(3) in a matter alleging that the defendant made fraudulent representations in marketing a dietary joint supplement. (*Mullins*, at p. 658.) Drawing from the Third Circuit's jurisprudence, the defendant in *Mullins* argued on appeal of the certification order that the class was not ascertainable because the plaintiff had "fail[ed] to show a reliable and administratively feasible way to determine whether a particular person is a member of the class." (*Id.*, at p. 661.)

The appellate court in *Mullins*, *supra*, 795 F.3d 654, rejected this view of ascertainability and affirmed the class certification order entered by the district court. (*Id.*, at p. 658.) In doing so, the federal court of appeals distinguished between a relatively uncontroversial " 'weak' version of ascertainability," and the more demanding ascertainability standard adopted by the Third Circuit. (*Id.*, at p. 659.) The " 'weak' " construction of ascertainability, the court explained, derives from "experience [that] has led courts to require that classes be defined clearly and based on objective criteria." (*Ibid.*) Even in this weak form, *Mullins* elaborated, the requirement of

a clearly defined class based on objective criteria is far from toothless, for it serves to weed out "classes that are defined too vaguely" (*ibid*.), "classes that are defined by subjective criteria, such as by a person's state of mind" (*id*., at p. 660), and "classes that are defined in terms of success on the merits — so-called 'fail-safe classes' " (*ibid*.), all of which raise due process or other fairness concerns. The *Mullins* court regarded this approach to ascertainability as striking an appropriate balance, whereas the Third Circuit's more exacting conception of this requirement did not. In the view of the *Mullins* court, the more demanding specification "does not further any interest of Rule 23 that is not already adequately protected by the Rule's explicit requirements. On the other side of the balance, the costs of imposing the requirement are substantial. The stringent version of ascertainability effectively bars low-value consumer class actions, at least where plaintiffs do not have documentary proof of purchases, and sometimes even when they do." (*Id*., at p. 662.)

*Mullins*, *supra*, 795 F.3d 654 then proceeded to dissect the specific policy arguments advanced for the Third Circuit's construction of the ascertainability requirement. (*Id*., at pp. 663-672.) One such contention was that the "stringent version of ascertainability 'eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members.' " (*Id*., at p. 663, quoting *Marcus*, *supra*, 687 F.3d at p. 593.) The *Mullins* court saw this concern as "better addressed by the explicit requirements of Rule 23(b)(3), which requires that the class device be 'superior to other available methods for fairly and efficiently adjudicating the controversy,' " with one consideration relevant to the superiority inquiry being " 'the

27

likely difficulties in managing a class action.'" (*Mullins*, quoting Rule 23(b)(3), (b)(3)(D).)

*Mullins*, *supra*, 795 F.3d 654 explained why it made more sense to address within the context of manageability any concerns about the burdens that could be associated with the identification of class members: "When administrative inconvenience is addressed as a matter of ascertainability, courts tend to look at the problem in a vacuum, considering only the administrative costs and headaches of proceeding as a class action. [Citation.] But when courts approach the issue as part of a careful application of Rule 23(b)(3)'s superiority standard, they must recognize both the costs *and benefits* of the class device. [Citation.] [¶] . . . In many cases where the heightened ascertainability requirement will be hardest to satisfy, there realistically is no other alternative to class treatment." (*Id.*, at pp. 663-664.) The court in *Mullins* cautioned that "[t]his does not mean . . . that district courts should automatically certify classes in these difficult cases," and granted that "[i]f faced with what appear to be unusually difficult manageability problems at the certification stage, district courts have discretion to insist on details of the plaintiff's plan for notifying the class and managing the action." (*Id.*, at p. 664.) Yet, the court continued, judges who encounter such challenges should attempt to leverage their "experience with and flexibility in engineering solutions to difficult problems of case management," and "refusing to certify on manageability grounds alone should be the last resort." (*Ibid.*)

The court in *Mullins*, *supra*, 795 F.3d 654 also addressed an argument that resonated with the Court of Appeal in this case — "that the heightened ascertainability requirement is needed to protect absent class members. If the identities of

absent class members cannot be ascertained, the argument goes, it is unfair to bind them by the judicial proceeding." (*Id.*, at p. 665.) It perceived that "[a] central premise of this argument is that class members must receive actual notice of the class action so that they do not lose their opt-out rights." (*Ibid.*)

The court in *Mullins*, *supra*, 795 F.3d 654 regarded this premise as mistaken. It emphasized that, when a class has been certified under Rule 23(b)(3), Rule 23(c)(2)(B) requires the provision of the " 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort' " — language connoting that individual notice need *not* be given to members who cannot be so identified. (*Mullins*, at p. 665.)[10] Nor, in the court's view, did principles of due process invariably require individual notice to absent class members. Instead, in cases such as the one before it, "When class members' names and addresses are known or knowable with reasonable effort, notice can be accomplished by first-class mail. [Citation.] When that is not possible, courts may use alternative means such as notice through third parties, paid advertising, and/or posting in places

---

[10] With classes certified under Rule 23(b)(1) or (2), meanwhile, the federal rules provide more generally that "the court may direct appropriate notice to the class." (*Id.*, Rule 23(c)(2)(A).)

frequented by class members, all without offending due process." (*Ibid*.)[11]

*Mullins, supra,* 795 F.3d 654 also explained why construing the ascertainability requirement as anticipating personal notice in all cases could provide absent class members with a pyrrhic victory. "More broadly," the court wrote, "the stringent version of ascertainability loses sight of a critical feature of class actions for low-value claims like this one. In these cases, 'only a lunatic or a fanatic' would litigate the claim individually, [citation], so opt-out rights are not likely to be exercised by anyone planning a separate individual lawsuit. When this is true, it is particularly important that the types of notice that courts require correspond to the value of the absent class members' interests. [Citation.] . . . . [¶] The heightened ascertainability approach upsets this balance. It comes close to insisting on actual notice to protect the interests of absent class members, yet overlooks the reality that without certification, putative class members with valid claims would not recover anything at all." (*Id*., at pp. 665-666.)

---

[11] *Mullins, supra,* 795 F.3d 654 also rejected the argument that a heightened ascertainability requirement was necessary to protect the due process interests of class action *defendants* by protecting them from bogus claims and disproportionate liability. (*Id*., at pp. 669-672.) These concerns do not resonate here, in any event. There is no suggestion that, if the plaintiff class ultimately prevails, Rite Aid will face any onslaught of spurious claims, much less a bevy that could not be weeded out through a competent claims administration process. Also, because it is known how many pools were sold and not returned, and how much in revenue Rite Aid earned from these sales, the overall body of claims has a functional ceiling that further marginalizes any prospect of exaggerated liability.

### C.  Analysis

> *1. An ascertainable class is one defined in objective terms that make the eventual identification of class members possible*

Although *Mullins*, *supra*, 795 F.3d 654 applied only federal law, much of its analysis rings true here as well.  We agree with *Mullins*' assignment of a limited but important function to the ascertainability requirement.  We conclude that the objectives of this requirement are best achieved by regarding a class as ascertainable when it is defined "in terms of objective characteristics and common transactional facts" that make "the ultimate identification of class members possible when that identification becomes necessary."  (*Hicks*, *supra*, 89 Cal.App.4th at p. 915.)  We regard this standard as including class definitions that are "sufficient to allow a member of [the class] to identify himself or herself as having a right to recover based on the [class] description."  (*Bartold*, *supra*, 81 Cal.App.4th at p. 828.)

This understanding of the threshold requirement of ascertainability for class certification protects the due process interests of all parties and absent class members without unduly impairing the efficacy of the class action mechanism. We have explained some of the benefits that class proceedings such as the one at bar can yield:  "Not only do class actions offer consumers a means of recovery for modest individual damages, but such actions often produce 'several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical

claims.' " (*Linder*, *supra*, 23 Cal.4th at p. 445, quoting *Vasquez*, *supra*, 4 Cal.3d at p. 808; see also *Vasquez*, at p. 807.)

But a class proceeding must be maintained in a manner consistent with due process. A class definition framed in objective terms that make the identification of class members possible promotes due process in at least two ways. Such phrasing puts members of the class on notice that their rights may be adjudicated in the proceeding, so they must decide whether to intervene, opt out, or do nothing and live with the consequences. (See *Hicks*, *supra*, 89 Cal.App.4th at p. 914 ["[a]scertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata"].) This kind of class definition also advances due process by supplying a concrete basis for determining who will and will not be bound by (or benefit from) any judgment. Allowing a class to be defined in vague terms, by contrast, could blunt any invocation of res judicata by the defendant in subsequent lawsuits brought by persons attempting to relitigate issues decided in the earlier class proceeding. The outcome might resemble that which obtains when the "one-way intervention" condemned by our decision in *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078 (*Fireside Bank*) occurs — the defendant could be unfairly exposed to a succession of essentially duplicative class lawsuits (see *id.*, at pp. 1078-1083).[12]

---

[12] The ascertainability standard we endorse also addresses similar fairness concerns that may be associated with other problematic class definitions, such as a class defined by its putative members' subjective states of mind, as opposed to

The Court of Appeal saw a slightly different set of due process considerations as favoring a more stringent approach to ascertainability. It expressed concern that, without an evidentiary showing by plaintiff, absent class members would never receive notice of the action and would therefore lack the opportunity to opt out. To this effect, the Court of Appeal quoted *Sotelo, supra*, 207 Cal.App.4th at page 649: " 'The theoretical ability to self-identify as a member of the class is useless if one never receives notice of the action.' " (*Noel, supra*, 17 Cal.App.5th at p. 1327.) We appreciate the court's interest in protecting the due process rights of absent class members. Yet, as we explain below, this concern does not justify the evidentiary burden that the Court of Appeal attached to the ascertainability requirement — or, for that matter, any blanket requirement that class members must be identifiable "by reference to official records" (*Rose, supra*, 126 Cal.App.3d at p. 932) to form an ascertainable class.

We agree, of course, that the provision of notice to absent class members carries due process connotations. (See *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S 797, 811 (*Shutts*); *Fireside Bank, supra*, 40 Cal.4th at p. 1083.) But due process does not dictate that certification of a putative plaintiff class invariably must depend on all absent class members being sent (much less receiving) individual notice of the action. Instead,

objective facts. (See 1 Newberg on Class Actions (5th ed. 2011) § 3:5, p. 168 ["[c]ourts generally deny certification when the putative class is defined by class members' state of mind"]; see also *Mullins, supra*, 795 F.3d at p. 660; *Simer v. Rios* (7th Cir.1981) 661 F.2d 655, 669-670.)

the law adopts a more nuanced and pragmatic approach, consistent with the general principle that when an important judicial mechanism for advancing the social good is involved, "A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313-314 (*Mullane*).)

*Mullane, supra,* 339 U.S. 306 provides the touchstone for assessing how due process informs the provision of notice in the context of a class action. The court in *Mullane* recognized that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information, [citation], and it must afford a reasonable time for those interested to make their appearance [citations]." (*Id.*, at p. 314.) Significantly, the court drew the following line: "But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' " (*Id.*, at pp. 314-315.)

Applying these principles, the court in *Mullane, supra,* 339 U.S. 306 reasoned that in connection with a particular judicial settlement of accounts, notice by personal mail was required for beneficiaries whose identities and mailing addresses were actually known. (*Id.*, at p. 318.) Yet, "in view of the character of the proceedings and the nature of the interests"

involved, notice by publication would suffice for those beneficiaries "whose interests or whereabouts could not with due diligence be ascertained." (*Id*., at p. 317.) Likewise, "more certain notice" could be dispensed with for those beneficiaries "whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge of the common trustee." (*Ibid*.) This notice scheme was "*the best practicable*, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*Shutts*, *supra*, 472 U.S. at p. 812, quoting *Mullane*, at pp. 314-315, italics added.)

Our case law has adopted a similarly practical approach, in which the circumstances of each case determine what forms of notice will adequately address due process concerns. (See *Linder*, *supra*, 23 Cal.4th at p. 444 [describing the notice inquiry as entailing due consideration of "the necessity, feasibility and costs of any particular form of notice"].) Recall that in *Daar*, *supra*, 67 Cal.2d 695, examined *ante*, we found the allegations in the complaint sufficient to state a viable class even as to taxicab customers who paid in cash, for whom the prospect of individualized notice was far-fetched at best. (*Id*., at p. 714.) In doing so, we disavowed any "necessity of identifying the individual members of such class as a prerequisite to a class suit. If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment." (*Id*., at p. 706.) We then added, "The fact that the class members are *unidentifiable* at this point will not preclude a complete determination of the issues affecting the class." (*Ibid*., italics added.) "Unidentifiable" means more than just unidentified. Our use of

the former term conveyed that in a case such as *Daar*, due process does not demand that the proponent of class treatment demonstrate, as a prerequisite for certification, that (much less *how*) class members eventually will receive individual notice of the action.

Since then, we have observed that individual notice may not always be required even for absent class members whose whereabouts are *known*, explaining "the representative plaintiff in a California class action is not required to notify individually every readily ascertainable member of his class without regard to the feasibility of such notice; he need only provide meaningful notice in a form that 'should have a reasonable chance of reaching a substantial percentage of the class members.'" (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 861, quoting *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 974; compare Rule 23(c)(2)(B) [upon certifying a class under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort"].) One Court of Appeal has elaborated that "when the membership of the class is huge, the damages are minimal, and res judicata and . . . other problems . . . are insignificant, notice by publication is adequate." (*Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 285.)

The pertinent statutes and California Rules of Court are in accord. With claims brought as putative class actions under the CLRA, "If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice may, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be

notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred." (Civ. Code, § 1781, subd. (d).) In the same spirit, the Rules of Court prescribe an array of considerations for determining the form or forms of notice that should be provided to a certified class. Pursuant to rule 3.766(e) of the California Rules of Court, "In determining the manner of the notice [to class members], the court must consider: [¶] (1) The interests of the class; [¶] (2) The type of relief requested; [¶] (3) The stake of the individual class members; [¶] (4) The cost of notifying class members; [¶] (5) The resources of the parties; [¶] (6) The possible prejudice to class members who do not receive notice; and [¶] (7) The res judicata effect on class members." The rules of court also provide that "[i]f personal notification is unreasonably expensive or the stake of individual class members is insubstantial, *or* if it appears that all members of the class cannot be notified personally, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action — for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group." (*Id.*, rule 3.766(f), italics added.)

To summarize, due process does not invariably require that personal notice be directed to all members of a class in order for a class action to proceed, or for that matter that an individual member of a certified class must receive notice to be bound by a judgment. (See *Juris v. Inamed Corp.* (11th Cir. 2012) 685 F.3d 1294, 1321 [citing cases]; 7AA Wright et al., Federal Practice & Procedure (3d ed. 2005) § 1789.1, p. 571.) It follows that a

construction of the ascertainability requirement that presumes such notice *is* necessary to satisfy due process, and demands that the plaintiff show how it can be accomplished, threatens to demand too much, too soon. It is likewise mistaken to take a categorical view that the relevant due process interests can be satisfied only when "official records" (*Rose*, *supra*, 126 Cal.App.3d at p. 932) supply the means of identifying class members, and for a similar reason: due process is not that inflexible.[13]

The Court of Appeal below recognized the possibility that due process might not require individual notice to absent class members in all circumstances. As recounted *ante*, the Court of Appeal noted that the court in *Aguirre*, *supra*, 234 Cal.App.4th 1290 had declined to require such notice to consumers within the plaintiff class. (*Noel*, *supra*, 17 Cal.App.5th at p. 1331.) It distinguished *Aguirre* on the ground that the class in that case was much larger than the proposed class is here. (*Noel*, at p. 1331.) We believe the point is more fundamental: As a rule, a representative plaintiff in a class action need not introduce evidence establishing how notice of the action will be communicated to individual class members in order to show an ascertainable class.

This bright-line rule maintains the straightforward nature of what is properly understood as a threshold requirement for class certification, and allows for the relevant

---

[13] As a somewhat distinct point, we also observe that premising ascertainability on the existence of official records capable of being used to identify class members might, in some situations, incentivize potential class action defendants to destroy or refuse to maintain useful records that could provide a basis for class treatment.

due process interests to be more sensitively calibrated and addressed through other mechanisms. As shown, the development of a notice plan that comports with due process implicates a diverse array of considerations. (See Cal. Rules of Court, rule 3.766(f); *Linder, supra,* 23 Cal.4th at pp. 444, 446.) Some of the facts relevant to the development of a constitutionally adequate notice plan normally will not be immediately obvious from the class definition itself. Regardless of the size of the class or other relevant circumstances, a demand that the representative plaintiff show how individualized notice could be provided to class members in order to establish an ascertainable class could preempt a more careful, nuanced, and potentially collaborative assessment, and in doing so impose upon the plaintiff an absolute requirement that closer review of all of the relevant facts could demonstrate to be excessive in light of the interests involved.

This case illustrates the problem. The record before us does not establish all of the facts and circumstances relevant to a determination regarding the appropriate form or forms of notice to the class. Yet the record casts substantial doubt on the proposition that due process can be satisfied only through the provision of individual notice to the approximately 20,000 members of the putative class. For one thing, these purchasers may not be reasonably identifiable. Meanwhile, given the modest amount at stake (the pool having retailed for $59.99), the odds that any class member will bring a duplicative individual action in the future are effectively zero. Thus the true choice in this case is not between a single class action challenging the packaging of the Ready Set Pool and multiple individual actions pressing similar claims; it is between a class action and no lawsuits being brought at all. Under the

circumstances, due process may not demand personal notice to individual class members, and to build a contrary assumption into the ascertainability requirement would be a mistake.[14]

Reading into the ascertainability element an additional requirement that the identification of class members must occur " 'without unreasonable expense or time' " (*Sotelo, supra*, 207 Cal.App.4th at p. 648) runs a similar risk of preempting a more careful analysis later. Our jurisprudence addressing class certification has stressed the importance of a careful weighing of both the benefits and the burdens that may be associated with a proposed class action. (See, e.g., *Linder, supra*, 23 Cal.4th at pp. 445-446.) A conception of ascertainability as concerned with whether class members can be identified without an unreasonable commitment of expense or time is at cross purposes with this direction. As the court in *Mullins supra*, 795 F.3d at pages 663 to 664 explained in rejecting a similar expansion of the ascertainability requirement, such an approach trains the court's attention, at a threshold juncture, exclusively toward the side of the ledger where costs and challenges are compiled. This focus means that full attention will not necessarily be given to countervailing considerations — such as whether these difficulties, although present, might nevertheless be effectively managed through application of the various tools and resources courts have at their disposal for effective

---

[14] To be clear, we have no occasion at this time to decide precisely what would constitute adequate notice to absent members of the proposed class in this case. Presumably, after remand any and all appropriate inquiries will be made into matters relevant to the provision of adequate notice.

supervision of a class proceeding, and whether, notwithstanding possible notice issues, an appropriately supervised class action nevertheless can be expected to deliver benefits that, from a comparative perspective, would make it preferable to alternative courses of action.[15]

---

[15]    Numerous decisions by the Courts of Appeal, in addition to the opinion below, have invoked and applied the standard for ascertainability originally set forth in *Rose v. City of Hayward*, *supra*, 126 Cal.App.3d at page 932, providing that "[c]lass members are 'ascertainable' where they may be readily identified without unreasonable expense or time by reference to official records." (See *Hefczyc v. Rady Children's Hospital-San Diego* (2017) 17 Cal.App.5th 518, 536-540; *Kendall v. Scripps Health* (2017) 16 Cal.App.5th 553, 574-575; *Cruz v. Sun World Internat., LLC*, *supra*, 243 Cal.App.4th at pp. 375-382; *Hale v. Sharp Healthcare*, *supra*, 232 Cal.App.4th at pp. 58-61; *Thompson v. Automobile Club of Southern California*, *supra*, 217 Cal.App.4th at pp. 728-731; *Faulkinbury v. Boyd & Associates, Inc.*, *supra*, 216 Cal.App.4th at p. 240; *Sotelo v. MediaNews Group, Inc.*, *supra*, 207 Cal.App.4th at pp. 648-650; *Mora v. Big Lots Stores, Inc.*, *supra*, 194 Cal.App.4th at p. 504; *Bomersheim v. Los Angeles Gay & Lesbian Center*, *supra*, 184 Cal.App.4th at p. 1481; *Ghazaryan v. Diva Limousine, Ltd.*, *supra*, 169 Cal.App.4th at pp. 1532-1533; *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th at p. 1334; *Bufil v. Dollar Financial Group, Inc.*, *supra*, 162 Cal.App.4th at pp. 1206-1208; *Aguiar v. Cintas Corp. No. 2*, *supra*, 144 Cal.App.4th at pp. 135-136.)  As our analysis should make clear, this is one way but not the only way to show an ascertainable class.  We therefore disapprove of this standard insofar as it could be perceived as exclusive. Likewise, insofar as the three-factor approach to ascertainability set forth in *Miller*, *supra*, 148 Cal.App.3d at page 873 could be read to demand a more exacting inquiry than the approach we endorse today, we disapprove of it, as well.

Our view of the ascertainability requirement does not prohibit a court asked to certify a class from considering the separate question of notice to absent class members. Arguments and evidence relating to the provision of notice to the class conceivably could counsel against class certification insofar as they may show that *another* requirement for a proper class proceeding, aside from ascertainability, has not been met — e.g., that a class action would be unmanageable, even after due consideration is given to how manageability concerns could be resolved; or that a class proceeding would not be superior to the alternatives. (Accord, *Mullins*, 795 F.3d at p. 664 ["If faced with what appear to be unusually difficult manageability problems at the certification stage, district courts have discretion to insist on details of the plaintiff's plan for notifying the class and managing the action."].)[16] But, at the risk of repetition, we conclude that these issues, where they exist, are appropriately addressed outside of and separately from the ascertainability requirement.

### 2. *The trial court abused its discretion when it found no ascertainable class existed*

It follows from the analysis above that the trial court erred when it determined that the class proposed by plaintiff is not ascertainable. It is. The phrasing, "All persons who purchased

---

[16] Even though class definition is logically antecedent to the question of how notice is to be provided to the class (see *Fireside Bank, supra*, 40 Cal.4th at p. 1074; *Home Savings & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1010) and notice is commonly addressed after class certification (see, e.g., *Linder, supra*, 23 Cal.4th at p. 444), contemporaneous inquiries into both class definition and notice are permissible under the CLRA (see Civ. Code, § 1781, subd. (c)(1), (2)) and the rules of court (Cal. Rules of Court, rule 3.766(c)).

the Ready Set Pool at a Rite Aid store located in California within the four years preceding the date of the filing of this action" is neither vague nor subjective. A member of the class could appreciate from this definition whether he or she is included within it, and thus be in a position to take appropriate steps to protect his or her interests. And the definition makes the res judicata consequences of a judgment clear, creating no ambiguity as to who will and will not be bound by the outcome. (See *Daar*, *supra*, 67 Cal.2d at p. 706.)[17]

To the extent that the trial court had concerns regarding the state of the record as it pertained to matters such as the provision of notice to class members, or how burdensome it would be to identify class members, those issues should not have been resolved in the context of ascertainability. And regardless of whether plaintiff's failure to supply evidence associated with the identification of class members might have supported a refusal to certify a class on some other ground (but cf. *Daar*, *supra*, 67 Cal.2d at p. 706), it manifestly did not justify a failure to find an ascertainable class. Our review ends there. (See *Linder*, *supra*, 23 Cal.4th at p. 436.)

### III. DISPOSITION

As noted *ante*, the trial court denied the motion for class certification in its entirety on ascertainability grounds. That

---

[17] The record developed below does not establish whether Rite Aid sold Ready Set Pools in other sizes during the class period. If so, the class definition's reference to purchasers of "*the* Ready Set Pool" (italics added) may require clarification, to establish that only purchasers of the model measuring eight feet by 25 inches are included within the class. This flaw within the definition would not, however, mean that the class is not *ascertainable*.

court also denied certification of the proposed CLRA class on the basis that common issues did not predominate. Because we do not address the latter aspect of the trial court's ruling here, overturning its ascertainability determination would not, by itself, make a CLRA class viable. The trial court also offered a third justification for denying class certification that was ambiguous in its scope. It is unclear whether the trial court had only the proposed CLRA class in mind when it determined that a class action would not be superior to the alternatives, or whether this conclusion applied to the entirety of the action. It also cannot be discerned from this vantage point whether the court's erroneous view of ascertainability informed its analysis on this issue. Because of these uncertainties, we reverse the judgment below and remand the case to the Court of Appeal with directions to remand the matter to the superior court for further proceedings consistent with our decision.

**CANTIL-SAKAUYE, C. J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Noel v. Thrifty Payless, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 17 Cal.App.5th 1315
**Rehearing Granted**

_____

**Opinion No.** S246490
**Date Filed:** July 29, 2019

_____

**Court:** Superior
**County:** Marin
**Judge:** Paul M. Haakenson

_____

**Counsel:**

Emergent Legal, Emergent, Christopher Wimmer, Peter Roldan; Public Justice, Leslie Brueckner and Karla Gilbride for Plaintiff and Appellant.

Chavez & Gertler, Mark A. Chavez; Public Citizen Ligation Group and Allison M. Zieve for Public Citizen as Amicus Curiae on behalf of Plaintiff and Appellant.

Rock Law, Matt J. Malone; Nelson & Fraenkel, Gretchen M. Nelson; Arbogast Law and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Lieff Cabraser Heimann & Bernstein, Robert J. Nelson, Roger N. Heller and Melisa Gardner for National Consumer Law Center and National Association of Consumer Advocates as Amici Curiae on behalf of Plaintiff and Appellant.

Jocelyn D. Larkin and Daniel Nesbit for Impact Fund, California Employment Lawyers Association, Centro Legal de la Raza, Legal Aid at Work and Worksafe as Amici Curiae on behalf of Plaintiff and Appellant.

Kelly, Hockel & Klein, Klein, Hockel, Iezza & Patel, Michael D. Early and Mark P. Iezza for Defendant and Respondent.

Utrecht & Lenvin and Paul F. Utrecht for Washington Legal Foundation and California Retailers Association as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Leslie Brueckner
Public Justice
475 14th Street, Suite 610
Oakland, CA  94612
(510) 622-8205

Michael D. Early
Klein, Hockel, Iezza & Patel
455 Market Street, Suite 1480
San Francisco, CA  94105
(415) 951-0535